ESTHER G. DAVIS *vs.* CENTRAL CONGREGATIONAL SOCIETY
OF JAMAICA PLAIN.

Suffolk.    March 15. — Sept. 10, 1880.    ENDICOTT & SOULE, JJ., absent.

If a religious society gives notice of a meeting to be held at its house of worship,
and invites the members of other societies to attend, a member of a church so
invited, while on the land of the society, is not a mere licensee, and may main-
tain an action against the society for a personal injury sustained, while in the
exercise of due care, from the dangerous condition of the defendant's premises.

In an action against a religious society for a personal injury sustained by falling
over a wall on the defendant's premises, there was evidence that there was a
circular path, eighteen feet wide, leading from the defendant's meeting-house
to the street; that one side of this path, as it approached the street, was
bounded by a wall, which separated the defendant's land from a side street,
and was two and a half feet high on the street; that the plaintiff, a woman,
while going from the meeting-house, after dark, to the street, and walking in
the manner in which she usually walked, struck her foot against the wall, at
a point where it was about eight inches above the path, and fell over the wall
into the side street, and was injured; and that the path was so insufficiently
lighted that she did not see the wall. *Held*, that whether the plaintiff was in
the exercise of due care, and whether the way was reasonably safe, were ques-
tions of fact for the jury.

TORT for personal injuries sustained by the plaintiff, by falling
over a wall on the defendant's premises. Trial in the Superior
Court, before *Gardner*, J., who directed a verdict for the defend-
ant, and reported the case for the determination of this court, in
substance as follows:

On October 15, 1873, the defendant, a duly incorporated
religious society, was the owner of a lot of land, with a meeting-
house thereon, bounded northeasterly by Seaverns Avenue, and
southeasterly by Elm Street, both public streets in Boston. A
circular driveway or path, about eighteen feet wide, ran from
near the corner of said street and avenue to the front doors of
the meeting-house, and round to the street. This path was cov-
ered with concrete, and was smooth and level, and was the only
means provided for access to and from Elm Street and the front
doors of the meeting-house. The society maintained religious
worship according to the usages of Congregational societies and
churches. The church worshipping in the meeting-house was a
voluntary association, united together by a covenant and articles
of belief, and was a distinct body from the society, and had no

control of the premises. Joseph B. Clark was the settled pastor over the society and church, but was not a member of the society. The care and control of the premises were intrusted to a prudential committee of five, chosen by the society. The pastor and deacons of the church had the right to grant the use of the meeting-house for religious meetings and services not inconsistent with the rights and purposes of the society.

The plaintiff, in order to show that she was invited to attend a meeting held at the meeting-house, offered evidence tending to prove that a meeting of the Suffolk South Conference of Churches was held on the afternoon and evening of October 15, 1873, in the defendant's meeting-house; that this conference was a voluntary association of thirty or thirty-four Congregational churches in Boston and vicinity, including the church worshipping with the defendant society, and the church in Brighton, of which the plaintiff was a member; that this conference was a distinct organization from the several churches composing it, having its clerk, or scribe, and other officers; that, by the usages of this association, its meetings were held once in six months with the different churches composing it, each church taking its turn, the place of the next meeting being determined at the conference last held; that the meeting of the conference to be held in October 1873 should, by said usages, have been held with one of the other churches, and was actually appointed to be held at some other church, and not with the church worshipping with the defendant, but, the church at which the meeting was to be held being unable to have the conference, Joseph B. Clark, without consultation with the prudential committee or other officers of the defendant society, or with the deacons of the church, and without any consent on the part of the defendant, except such as may be inferred from the facts herein stated, gave permission to the scribe or other proper officers of the conference to hold the conference meeting at the defendant's meeting-house during the afternoon and evening of October 15, 1873, and the scribe, acting upon this permission, sent notices of the meeting to the several churches; that, in accordance with the usages of the conference, the notice contained a request that each church should choose two delegates to attend the meeting, and also contained a general invitation for the other members of the said several churches to

attend; that this notice was given from the pulpit of the church in Brighton, of which the plaintiff was a member, and in like manner in the defendant's meeting-house on the Sunday next before the meeting.

Evidence was also offered tending to prove that it was the custom for members other than delegates to attend such meetings; that the delegates and officers of the conference when assembled had charge of the meeting, voted, and transacted such business and conducted such services as came before the meeting; and that the plaintiff was not a delegate to the meeting. There was evidence tending to show that some of the members of the defendant's prudential committee, and some or all of the deacons, were present when the notice of the meeting was given in the defendant's meeting-house, and that no action was ever taken by the defendant society or its officers as to objecting or consenting to the meeting being held according to said notice.

The plaintiff testified that on October 15, 1873, in pursuance of the invitation or notice aforesaid, and the custom aforesaid, she went from her house in Brighton to attend the meeting; that she had no business with the defendant society or its officers, and was not a delegate; that she attended for her own benefit and as a visitor, and that she had been in the habit of attending conference meetings with which her church was connected for forty years; that she was never before at the defendant's meeting-house, and in going had to inquire the way there; that at about three o'clock that afternoon she entered the circular path at the corner of said avenue and street, and passed through the same and entered the front door of the meeting-house; that there was no difficulty in passing over the walk safely in the daytime; that she did not notice the wall or embankment in the afternoon, though there was nothing to prevent her seeing the same if she had looked, and that she remained within the meeting-house throughout the entire services, until the close thereof, at nine o'clock in the evening; that, at the close of the meeting in the evening, the plaintiff passed out of the front door, and as she was walking along the path towards the street, in the manner in which she usually walked, "not fast," she struck her right foot or leg against the wall, at a point where it was seven or eight inches high, and fell over the wall on to the sidewalk,

and was injured; that said path at the time was filled with people passing out, and there were many persons before and behind her, and on her right hand; that she did not see the wall before she fell. Three friends who were with her, testified that they did not see the wall, and neither of them hit or walked against it.

The plaintiff, in order to show that the defendant was guilty of negligence in the construction and maintenance of the path, and that the same was dangerous, offered evidence tending to prove that there was a bank wall two and one half feet high, extending the whole length of the northeasterly side of the defendant's land, the face of which wall formed the boundary line between the land and Seaverns Avenue; that the top of the wall was eighteen inches wide, and level; that the northeasterly line of the path, from the front door of the meeting-house to the point of its conjunction with said wall, was a curved line; that at the point of conjunction the walk and top of the wall formed a level surface; that from that point to the entrance to the premises the line of the path was a straight and descending line along the inner side of the wall, and formed an inclined plane; that at the point at which the plaintiff fell over the wall, the top of the wall was seven or eight inches higher than the path; that, at the time of the accident, there was no railing or other fence than the wall between the pathway and the avenue; that a railing or fence had been put there by the defendant since the accident; that the path was not lighted, except as far as it might be lighted from the gas-lights in the vestibule of the meeting-house, and a street gas-light, on the opposite side of Elm Street, about seventy feet distant, which has, since the accident, been moved by the city to the corner of said street and avenue.

The judge directed a verdict for the defendant. If the ruling was correct, judgment was to be entered on the verdict; otherwise, the verdict was to be set aside, and a new trial ordered.

*H. C. Holt,* for the plaintiff.

*C. G. Keyes,* for the defendant.

COLT, J. To maintain this action, it must be shown that the defendant corporation was chargeable with some neglect of duty which it owed to the plaintiff, by reason of which she suffered

the injury complained of. The injury was caused by falling over a wall by the side of a passageway leading from the street to the front entrance of the defendant's church edifice. It is alleged that this way was dangerous because of the failure of the defendant to provide by railing or other suitable protection against such an accident.

The owner or occupier of real estate is under no obligation to keep the premises safe for those who enter without inducement or invitation, express or implied, and the plaintiff must show that at the time of the injury she was passing over the way in question by the invitation of the defendant, and not by mere license or permission. The fact that the plaintiff was induced by the defendant to enter upon a dangerous place without warning, is the negligence which entitles the plaintiff to recover. *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216. *Larue* v. *Farren Hotel Co.* 116 Mass. 67. *Severy* v. *Nickerson,* 120 Mass. 306.

The first question in the case is whether there was any evidence, which should have been submitted to the jury, that the plaintiff was induced by the express or implied invitation of the defendant to enter upon the premises.

It appears that the plaintiff attended in the evening a religious meeting in the defendant's house of worship, and on leaving, at its close, was injured in passing from the same to the street. The meeting which she attended was the meeting of a conference of congregational churches in the vicinity of Boston, which included the church connected with the defendant society, and also the church in Brighton of which the plaintiff was a member. This conference is an organization distinct from the religious societies of which it is composed, and its periodical meetings are held in the houses of worship of the different churches by turn. There was evidence that the meeting which the plaintiff attended was held in the defendant's church by the permission of the pastor, approved or ratified by the officers of the church and society, who had the care and custody of the building, and the right to grant the use of it for religious services of this description. It also appears that, in accordance with the usages of the conference, notices were sent to the several churches, containing a general invitation to all the members of the same to attend this meeting,

and that one of these invitations was read from the pulpit of the church in Brighton on the Sunday before.

This evidence would clearly justify a jury in finding that the plaintiff came by the defendant's invitation. The authority given by the defendant to the conference to hold its meeting in this place implied an authority to secure an attendance by invitations given in the known and usual manner, and it is unnecessary to inquire whether the construction of this passageway, thus obviously left open to the free use of all who might desire to attend religious service in the church, would not in itself imply such an invitation as would impose on the defendant the duty of making it reasonably safe to those who in the exercise of due care might use it.

The application of the rules on which the defendant's liability depends is not affected by the consideration that this is a religious society, and that the plaintiff came solely for her own benefit or gratification. It makes no difference that no pecuniary profit or other benefit was received or expected by the society. The fact that the plaintiff comes by invitation is enough to impose on the defendant the duty which lies at the foundation of this liability; and that too although the defendant in giving the invitation was actuated only by motives of friendship and Christian charity. In *Sweeny* v. *Old Colony & Newport Railroad*, above cited, the defendant was held liable, because the plaintiff was induced to enter upon a private crossing over the railroad, although he had no business with the corporation, and simply attempted to cross for his own convenience. And this defendant, as an incorporated religious society and as owner and occupier of the premises in question, is subject to all the duties and liabilities which are incident to the ownership and possession of real estate.

On the question whether the defendant was chargeable with neglect of duty in not providing a reasonably safe way to and from the church, we cannot say, as matter of law, that the construction, location and direction of the way, with the wall and declivity by its side, the want of a proper railing, and the insufficiency of light, would not justify a finding that in the night time it was unsafe for the use of a person exercising ordinary care and prudence. Nor can we say that the evidence shows conclusively

that the plaintiff was not in the exercise of due care. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. But the fact that this court considers the case as one proper to be submitted to the jury on these points is not to be taken as an indication of an opinion that the finding should be for the plaintiff. It is not a question here of the preponderance of evidence; and it is often the duty of the court to submit a question of fact to the jury, on the plaintiff's request, when the weight of evidence may appear to be against him. *New trial ordered.*