# Betts *v.* Young Men's Christian Association of Erie, Appellant.

*Negligence—Public charity—Y. M. C. A.—Exemption—Respondeat superior—Exception.*

An association formed for general and public usefulness, free from the taint of private gain to the associators, constitutes a public charity. Under the evidence in this case, the Young Men's Christian Association of Erie is a public charity.

Such a public charity cannot be made responsible for the negligence of its servants and the law of respondeat superior does not apply.

A Young Men's Christian Association is not liable in an action of negligence for injuries received by the fall of a chandelier erected in the lobby of its building.

Argued April 15, 1924. Appeal, No. 64, April T., 1924, by defendant, from judgment of C. P. Erie Co., Sept. T., 1921, No. 289, on verdict for plaintiff, in the

case of G. Edgar Betts and Catherine Betts v. Young Men's Christian Association of Erie. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Trespass to recover damages for personal injuries. Before ROSSITER, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff, G. Edgar Betts, in the sum of $1,616.50, and for plaintiff, Catherine Betts, in the sum of $609.29, and judgment thereon. Defendant appealed.

*Error assigned* was, among others, refusal of defendant's motion for judgment non obstante veredicto.

W. P. *Gifford*, of *Gunnison, Fish, Gifford & Chapin*, for appellant.—The defendant is a purely public charity, and as such is exempt from liability for damages for the torts of its servants or employees: Gable v. Sisters of St. Francis, 227 Pa. 254; Boyd v. Fire Insurance Patrol, 113 Pa. 269; Thomas v. Ellmaker, 1 Parsons 98; Humane Fire Company's App., 7 Norris 389; Miller v. Porter, 53 Pa. 292; Manners v. Library Company, 93 Pa. 165; Bethlehem Boro. v. Perseverance Fire Co., 81 Pa. 445; Paterlini v. Memorial Hospital Assn., 247 Fed. 639.

John B. *Brooks*, and with him Charles H. *English* and Frank B. *Quinn*, for appellee.—The defendant association was not exempt from liability for the negligence of its servants: Delaware County Institute of Science v. Delaware County, 94 Pa. 163; Chapin v. Holyoke Young Men's Christian Association, 164 Mass. 280.

OPINION BY KELLER, J., October 13, 1924:

This action in trespass was brought by G. Edgar Betts and Catherine Betts, his wife, to recover the damages

suffered by them respectively by reason of injuries inflicted upon the wife through the fall of a large chandelier in defendant's main lobby, while she was trimming it for the holidays. Separate verdicts were recovered in favor of the plaintiffs, and separate judgments entered upon these verdicts, as required by the Act of May 8, 1895, P. L. 54. But one appeal was taken, which appellant has elected to refer to the judgment of the husband.

The only errors assigned are to the refusal of the court below to give binding instructions in favor of the defendant and enter judgment non obstante veredicto in its favor. The grounds upon which a directed verdict was asked were, (1) that the plaintiff had failed to prove the defendant guilty of the negligence averred in the statement; (2) that defendant is a public charity and as such is not liable for the torts of its agents and employees. We will consider the latter ground first.

The defendant was incorporated as a Young Men's Christian Association by special Act of April 14, 1863, P. L. 418. While the purpose of the corporation was not specifically stated in the charter, the general objects of Young Men's Christian Associations were so well known that it was evidently not thought necessary to specify them further, any more than it would be necessary to explain the purpose or object of a hospital. The common understanding of the words "Young Men's Christian Association," gives them the quality of a recognized standard. See Mohler v. Eby (TAFT, C. J.) 264 U. S. 32. Such object is, primarily, the spiritual, mental and physical welfare and improvement of young men: Act of March 29, 1859, P. L. 320; Act of May 9, 1889, P. L. 163; and the testimony on the trial of this case defined the objects of the corporation to be in accordance with such general understanding. The defendant maintains a large association building in the City of Erie, which cost, ground and structure, $450,000, of which $350,000 was donated by public subscription and $100,000 is car-

ried by way of mortgage.  It has 2,100 members, of various classes of membership, ranging in cost from $3 to $25 per year, of which only the highest ($25 per year) pay in full for the benefits received or services furnished, and of these there are less than 150 enrolled—this class being "intended for those who are able to pay their proportionate share of the actual cost of furnishing full privileges"; all the others pay less than the cost of furnishing the privileges enjoyed.  Any man of good moral character, without regard to race, color, religious creed, nationality or social condition can become a member of the association, by joining one of the classes of membership, and secure its advantages at less than cost; but the management and direction of the corporation is limited to such active members as are members "in good standing of an evangelical church, that recognizes, in its doctrines, the divinity of Jesus Christ, the Lord and Saviour of mankind, and a future state of eternal reward and punishment."  Its activities are directed along the lines of religious work, educational work, athletics, social welfare, boys' work and general welfare, but all are conducted with the ultimate end in view of improving the spiritual, mental and physical well-being of young men. In accordance with its general object the corporation performs many services which may be enjoyed by the public at large, as distinguished from its membership, freely and without any cost.   Thus, it conducts public religious meetings and Bible classes; it maintains free reading rooms open to the general public; it furnishes social and musical entertainments which the public may attend without cost; it conducts community meetings and lends the use of its rooms to outside organizations without charge.   It conducts educational classes, the benefits of which may be enjoyed by nonmembers on payment of a small fee (less than the cost of the service), and were gratuitously open to ex-service men following the World War.   It organizes free naturalization and Americanization classes for the special benefit of young

men who are foreigners but desire to become American citizens. It carries on a free employment bureau and finds suitable boarding houses for applicants outside the building. It maintains a gymnasium and swimming pool for the physical well-being of the young men of the community, which is open to all young men of good moral character, on payment of a membership fee less than the cost of service, and is free to members of the fire department. That young men away from home might be assured of comfortable homes surrounded by proper influences, it established dormitories and rented lodgings for less than such accommodations could be secured elsewhere, and in order that such lodgers could have good food at reasonable prices, it founded a cafeteria, to which the general public was admitted on a parity with its members; and in connection with such dormitories and cafeteria it has given nearly every day and night free lodgings and meals to men—amounting to hundreds in the course of the year—who would have been left to walk the streets if certain rooms in the building had not been set aside for such cases. It has no capital stock; its land, buildings, furnishings and equipment were all secured by public subscription—and it owns no property not so secured. It makes no profits and can declare no dividends. In its operation it incurs an annual deficit, over and above its membership fees and the receipts from dormitories, cafeteria, etc., which is made up by public subscription or recourse to the "Community Chest." In the year 1920 the deficit was $10,000, in addition to $41,000 received from the Community Chest, and if interest on the investment had been considered, the annual deficit of operation would have been in the neighborhood of $75,000. Any apparent profit or surplus from one department or activity, such as the cafeteria, is devoted to the general work of the association. None of the trustees or officers of the corporation receive any compensation or reward for their services or reap any personal gain therefrom.

From this short review of its objects and activities we have no hesitation in holding that the defendant is carrying on a work of public charity, and that in accordance with the law as laid down by the Supreme Court in this State the rule of respondeat superior in negligence cases does not apply to it (Gable v. Sisters of St. Francis, 227 Pa. 254; Scibilia v. Phila., 279 Pa. 549, 557) ; and it is relieved of liability to the plaintiff for the injuries suffered by his wife. The object of the corporation is the spiritual, mental and physical welfare and improvement of young men, a benevolent and charitable purpose. It is general and public in scope, and without limitation or restriction—all men of good character may take advantage of its services on a common basis, and receive its benefits—and no personal or private gain accrues to the members of the corporation therefrom—this makes it a purely public charity.

We are of opinion that the contention of appellee that an organization is not entitled to be classed as a public charity within the rule just mentioned unless its activities are confined to the dispensing of alms and beneficences to the poor and needy, is too narrow a construction of the law as laid down by our Supreme Court. It has been held in a number of cases that an association formed for general and public usefulness, free from the taint of private gain to the associators, constitutes a public charity: Thomas v. Ellmaker, 1 Pars. 98, 108; Humane Fire Co.'s App., 88 Pa. 389, 391; Bethlehem Boro. v. Perseverance Fire Co., 81 Pa. 445, 457; Fire Ins. Patrol v. Boyd, 120 Pa. 624, 644, 647; Cresson's App., 30 Pa. 437, 450; Phila. v. Women's Christian Association, 125 Pa. 572, 579; Miller v. Porter, 53 Pa. 292, 300; Price v. Maxwell, 28 Pa. 23, 36. In Jackson v. Allen, 14 Allen (Mass.) 556, a charity was defined by Mr. Justice GRAY to be, "A gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, by relieving their bodies from

disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." In Donohugh's App., 86 Pa. 306, the Supreme Court affirmed the decree on the opinion of the court below (MITCHELL, J.). In that opinion Judge MITCHELL said: "The commonest and most familiar meaning of charity is almsgiving, but that narrow definition is not the primary or most important one given in the dictionaries or sanctioned by the usage of English-speaking people. The moment the word is used in connection with the present subject-matter of charitable gifts or charitable institutions the popular as well as legal mind takes in at once its wider scope of goodwill, benevolence, desire to add to the happiness or improvement of our fellow-beings. It is in this sense that, not to mention the numerous other illustrations, our own local gifts of Elliott Cresson, for the planting of shade trees in the streets of Philadelphia (Cresson's Appeal, 6 Casey 437), and a gift to a volunteer fire company for the protection of the property of the citizens (Thomas v. Ellmaker, 1 Pars. 98), have been recognized as charities, both in the legal and in the popular estimation" (p. 312). And in the same case, the Supreme Court held that the word "purely" modifying the phrase "public charity," should not be construed so as to confine it to institutions solely controlled and administered by the State, but should be extended to private institutions for purposes of purely public charity and not administered for private gain. In Gable v. Sisters of St. Francis, supra, it was held that the character of the defendant as a purely charitable institution was not affected by the fact that a portion of the hospital maintained by it was devoted to pay patients who paid in full for the nursing and attention received by them. The same ruling was made in Massachusetts in McDonald v. Mass. General Hospital, 120 Mass. 432, where the corporation by its rules required of its patients payment for their board, according to

their circumstances and the accommodations they received; and in Gooch v. Assn. for Relief of Aged and Indigent Females, 109 Mass. 558, where it was held that a corporation established for the support of poor and old women which devoted all its funds to the support of such women in its home, and was no source of profit to its members, was a charitable corporation although it required a payment of money as a requisite for admitting a woman into its home. In Phila. v. Women's Christian Assn., supra, Chief Justice PAXSON said with reference to an institution similar in scope and character to this defendant: "It will be seen from the foregoing that the object of the association is to improve the temporal, moral and religious welfare of young females who are obliged to earn their own support, and that as a means to this end, it furnishes them with food and lodging, not as paupers, but for a compensation, which, while it does not compensate, aids in defraying the expenses, and thus preserves the self-respect of the recipients, while to others who are unable to pay, temporary shelter is furnished free, and aid extended to them in the way of procuring employment......There is no element of gain in the object and operations of this association. It is a public charity" (p. 579). In Daly's Est., 208 Pa. 58, a bequest of a fund "to furnish homes, shelter, protection and instruction and improvement to industrious girls and women, while either in or out of employment, at the least possible cost to them commensurate with maintaining the proper sense of self-respect on the part of the beneficiary" was held to create a public charity. See also Donohugh's App., supra, p. 313, and Price v. Maxwell, supra, p. 34. It is becoming more and more the aim of charity societies to teach persons how to become self-supporting rather than merely to dole out alms, and the charitable character of the organization is not lost by such change of method.

Nor does it make any difference in the result that the defendant's governing body is limited to members in

good standing of an evangelical church. In the Gable case (227 Pa. 254) the direction of the hospital was under the control of a Roman Catholic Sisterhood; the public had no voice in or control over its management. See also McDonald v. Mass. General Hospital, supra. The public character of a charitable institution, to be within the rule above mentioned, is determined by the generality of its objects and operations, not by its control by the public. The latter is not a feature which determines the public or general scope of its charitable activities: Donohugh's App., supra.

We have found no Supreme Court decision in this State which is opposed to the foregoing view. Of the two authorities from other states relied upon by the appellee, State (trustees of Y. M. C. A., prosecutor) v. City of Paterson, 61 N. J. L. 420, 39 Atl. 655, involved a claim for exemption from taxation, and it appears that the State of New Jersey has not adopted the practice approved in this State (Phila. v. Barber, 160 Pa. 123, 126), of apportioning the property of a charitable corporation for purposes of taxation and exempting a part of it when other parts produce income. As to the other, Chapin v. Holyoke Y. M. C. A., 165 Mass. 280, 42 N. E. 1130, the opinion is very short and unsatisfactory and does not appeal to us as sound or convincing. It is not in accord with the basic principles laid down by our highest court in the cases cited above.

In view of our action on this branch of the case it is not necessary to consider whether the defendant was guilty of negligence in failing to inspect the chandelier at stated times, after it had been erected by a competent electrical contractor, and see if it was still securely fastened, the ground on which the question of negligence was submitted to the jury. Our failure to do so must not be understood as a ruling upon the question.

The assignments of error are sustained. The judgment in favor of G. Edward Betts is reversed and is now entered in favor of the defendant.