HELENA GLASER *vs.* CONGREGATION KEHILLATH ISRAEL.

Norfolk. January 18, 1928.— May 24, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & SANDERSON, JJ.

*Charity. Religion. Corporation,* Charitable, Religious. *Constitutional Law,* Religious worship. *Negligence,* Invited person.

A Massachusetts corporation, incorporated for the purposes of "the maintenance of public worship in accordance with the law and traditional customs of the Orthodox Jewish Faith; [and the] maintenance of a religious school" and other kindred matters, is a charitable corporation; and one who, while not a member of its congregation, at its invitation in writing attends a service at a temple owned and maintained by it and devoted to religious service, and suffers personal injuries by falling on an accumulation of snow and ice, through negligence of its officers and agents permitted to be on the steps leading from the street to the entrance of the temple, cannot maintain an action of tort against the corporation to recover damages resulting therefrom. Distinguishing *Davis* v. *Central Congregational Society*, 129 Mass. 367.

TORT for personal injuries. Writ dated November 17, 1925.

In the Superior Court, the action was tried before *Mc-Laughlin,* J. Material evidence is stated in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $1,800. The defendant alleged exceptions.

*J. E. Begley,* (*W. Rosnosky* with him,) for the defendant.
*J. F. O'Connell,* (*E. H. Lane* with him,) for the plaintiff.

RUGG, C.J. This is an action of tort to recover compensation for personal injuries caused to the plaintiff by falling on an accumulation of snow and ice on the steps leading from the street to the entrance of the temple of the defendant, a building devoted to religious purposes. The plaintiff was not a member of the congregation but attended the service at the time in question in response to a written invitation from the defendant. The corporate purposes of the defendant, as declared in its charter, are "the maintenance of public worship in accordance with the law and traditional customs of the Orthodox Jewish Faith; [and the] maintenance of a religious school" and other kindred matters not here material. The verdict for the plaintiff rendered by the jury after full and appropriate instructions, to which no exceptions were taken, establishes in her favor essential facts as to her due care and the causal connection of her injuries with negligence of the defendant. The single question is whether the written motion for the direction of a verdict for the defendant ought to have been granted.

The defendant is a charitable corporation. "No object is more clearly charitable, in the sense of the law, than the advancement of religion and education among an indefinite number of persons." *Fairbanks* v. *Lamson,* 99 Mass. 533. *Jackson* v. *Phillips,* 14 Allen, 539, 552, 553. A gift for a "church, in the modern sense of that word, as a place for public worship, open to everybody and established for the promotion of religion and morality among all people, whether regularly connected with its ecclesiastical organization or not, is a charity." *Chase* v. *Dickey,* 212 Mass. 555, 566, and

many cases there collected.   These cases have been followed
in more recent decisions.   That principle is not now open to
discussion.   *Ripley* v. *Brown*, 218 Mass. 33, 37.   *Crawford* v.
*Nies*, 220 Mass. 61, 64.   *Crawford* v. *Nies*, 224 Mass. 474,
485.   *McNeilly* v. *First Presbyterian Church*, 243 Mass. 331,
338.

These decisions have all been rendered with respect to
some denomination of Christians.   See also *Silsby* v. *Barlow*,
16 Gray, 329, 330, *Weld* v. *May*, 9 Cush. 181.   Freedom to
worship the Supreme Being "in the manner and season most
agreeable to the dictates of his own conscience," "provided
he doth not disturb the public peace, or obstruct others in
their religious worship," is secured by art. 2 of the Declara-
tion of Rights of the Constitution of this Commonwealth.
By art. 11 of the Amendments to the Constitution further
provision is made for the security of religious freedom, con-
cluding with the mandate that "all religious sects and de-
nominations, demeaning themselves peaceably, and as good
citizens of the commonwealth, shall be equally under the
protection of the law; and no subordination of any one sect
or denomination to another shall ever be established by law."
By art. 46 of the Amendments, "No law shall be passed
prohibiting the free exercise of religion."   These great
guaranties of religious liberty and equality before the law
of all religions are not confined to adherents of the Christian
religion or to societies and corporations organized for the
promotion of Christianity.   They extend likewise to the
adherents of the ancient religion whose sacred scriptures
form a part of the Bible.   We are of opinion that Jews as
well as Christians are protected by these explicit declarations
of religious equality.   See in this connection *Saltman* v.
*Nesson*, 201 Mass. 534, *Bowman* v. *Secular Society, Ltd.*
[1917] A. C. 406, 448–450, 464, 471, 472, *Bourne* v. *Keane*,
[1919] A. C. 815.

A public charitable corporation is not liable for the negli-
gence of its officers or servants.   That general principle is
established by numerous of our adjudications beginning with
*McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432,
all reviewed at length in *Roosen* v. *Peter Bent Brigham Hospi-*

*tal,* 235 Mass. 66. It is not necessary to do more than refer to that discussion and decision. That principle has been followed and applied in *Kidd* v. *Massachusetts Homœopathic Hospital,* 237 Mass. 500, *Foley* v. *Wesson Memorial Hospital,* 246 Mass. 363, *Young* v. *Worcester,* 253 Mass. 481.

That principle and the reasoning on which it rests seem as applicable to a religious as to any other charity. No sound distinction in this particular can be made to the disadvantage of a charity established for the promotion of religion.

A distinction has been established as to the degree of duty owed by one who invites another to enter upon his premises solely for the business of the guest and without benefit to the inviter, and by one who invites another to come upon his premises for the business and benefit of the inviter, or of both. It has been held that one who for his own purposes goes upon the premises of the defendant, even though at the latter's invitation, cannot recover for ordinary negligence of the defendant, as, for example, one who attends a wake or a funeral. *Hart* v. *Cole,* 156 Mass. 475. *Plummer* v. *Dill,* 156 Mass. 426. *Massaletti* v. *Fitzroy,* 228 Mass. 487, 507, 508. If this be treated as applicable to one who attends a service of religious worship in a church or temple open to the public, the plaintiff cannot recover, because such services are for the benefit of those present and not for the benefit of the owner of the edifice in which they are held. A corporation organized as a public charity can hardly gain a benefit or advantage from those who, even at its invitation, come to its premises in order to avail themselves of its purely philanthropic ministrations without the payment of any admission fee, and ought not to be held liable to them for negligence. See *Hordern* v. *Salvation Army,* 199 N. Y. 233, 237.

The plaintiff relies upon *Davis* v. *Central Congregational Society,* 129 Mass. 367, where a plaintiff was permitted to recover under circumstances similar to those here disclosed. Respecting that decision it was said in *Farrigan* v. *Pevear,* 193 Mass. 147, 149 (an action for negligence against a public charity), "At the outset it may be said that the case of *Davis* v. *Central Congregational Society,* 129 Mass. 367, on which the plaintiff relies, and that of *Smethurst* v. *Barton Square*

*Church*, 148 Mass. 261, are not authorities in his favor, as in those cases the question of the liability of a public charity for the negligence of its servants or agents does not appear to have been raised or decided." Such a statement hardly could have been made without an examination of the original papers. That statement is affirmed on the strength of such examination, now again made. In those circumstances that decision cannot be taken as an authority for the point here raised, which was not there brought to the attention of the court or ruled upon. The court is now free to decide the case according to what appear to be sound principles. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343, and cases there collected. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545. The authority of *Davis* v. *Central Congregational Society*, *supra*, was much shaken by what was said in *Massaletti* v. *Fitzroy*, 228 Mass. 487, at pages 507, 508. It is to be observed, also, that at the time of the decision of *Davis* v. *Central Congregational Society*, the conception of a church or religious society as a public charity had not been so firmly and broadly established as now. Less than five years before that decision it was said in *Old South Society* v. *Crocker*, 119 Mass. 1, 23, that "when there is a body, or a definite number of persons, ascertained or ascertainable, clearly pointed out by the terms of the gift to receive, control and enjoy its benefits, it is not a public charity, however carefully and exclusively the trust may be restricted to religious uses alone." In *Attorney General* v. *Federal Street Meeting House*, 3 Gray, 1, at page 49, it was said that the purpose of the organization there in question in substance was to constitute a religious society for the use of the members and pewholders and not for the public. Concerning this ground for decision in those and similar cases it was said by Chief Justice Knowlton in *Sears* v. *Attorney General*, 193 Mass. 551, at pages 555, 556, that it "is not according to the conditions existing in modern churches. Most churches are not only open to the public, but their proprietors seek to promote religion and morality among the people generally," and, referring to those and other earlier cases, "they must be considered as overruled by the later decisions."

It follows that the motion for a directed verdict for the defendant ought to have been granted. The defendant's exceptions are sustained and in accordance with G. L. c. 231, § 122, judgment is to be entered for the defendant in the Superior Court.

*So ordered.*