## Holda v. Purcell et al.

*Knight & Kivko,* for plaintiff.

*Richard Henry Klein, John W. Kephart,* and *Walter B. Gibbons,* for defendant petitioner.

MORGANROTH, P. J., June 26, 1944.—Anna Holda, plaintiff, claims that the Rev. James J. Purcell, assistant pastor of St. Joseph's Roman Catholic Church of Ashland, Pa., in Schuylkill County, while in the performance of his duties as assistant pastor, and as the employe, agent, and servant of Dennis J. Dougherty, Cardinal Archbishop of Philadelphia, was operating an automobile on a public highway through the Village of Atlas, in Northumberland County, and negligently caused his automobile to strike her while she was lawfully crossing the said highway, causing injuries to her person. She also claims that the said cardinal archbishop exercises over the said Rev. Purcell, in connection with the latter's services as assistant pastor, the powers of supervision, control, and removal.

Plaintiff brought an action of trespass against the Rev. Purcell, the cardinal archbishop, and St. Joseph's Roman Catholic Church of Ashland.

Counsel entered a general appearance for the Rev. Purcell and appearances de bene esse for the cardinal archbishop and the church. At the time the appearances de bene esse were entered, the court, on petition, under the Act of March 5, 1925, P. L. 23, granted a rule on plaintiff to show cause why the question of jurisdiction over defendant, the cardinal archbishop, should not be determined preliminarily, and why service of the writ of summons in trespass on the said cardinal

archbishop should not be set aside and the return quashed. More than two years later, on December 7, 1943, interrogatories to the said cardinal archbishop were filed. Agreement was made between counsel for plaintiff and defendants that testimony of the said defendant, the cardinal archbishop, be taken upon interrogatories and cross-interrogatories before a notary public in the City of Philadelphia, and all questions propounded and the answers thereto be read into the evidence either in any preliminary proceeding or upon the trial of the case, with the same force and effect as if the said cardinal archbishop were present and testifying in person. Subsequently counsel for plaintiff filed a waiver of plaintiff's right to file cross-interrogatories.

The petition for the rule raising the question of jurisdiction and praying that the writ of summons in trespass on the said cardinal archbishop be set aside and quashed averred that the said cardinal archbishop is not the owner of the vehicle allegedly operated by the Rev. Purcell at the time and place of the said accident; that he had no control whatsoever of the use and operation of the said vehicle; that the Rev. Purcell is not the agent, servant, or employe of petitioner; and that the said automobile at the time of the accident was not being used or operated for or on any business of petitioner.

The depositions by said written interrogatories of the cardinal archbishop were filed January 5, 1944. The cardinal archbishop answered, inter alia, that his office and residence are in the City and County of Philadelphia; that he is not a resident of the County of Northumberland; that he has been Cardinal Archbishop of the Diocese of Philadelphia of the Catholic Church of the Roman Rite continuously since July 10, 1918; that on July 14, 1939, the date of the alleged accident, the Rev. James J. Purcell held the canonical office in the Roman Catholic Church of assistant pastor (vicarius co-operator) in St. Joseph's Church, Ash-

land, within the Diocese of Pennsylvania, and that the Rev. Purcell was assigned to said office by the cardinal archbishop; that St. Joseph's Church is a parish of the Roman Catholic Church, composed of the members of said church, and that the parish is one of a number comprising the Diocese of Philadelphia; that he is not the owner of the automobile in the alleged accident; that the scene of the alleged accident is in the Diocese of Harrisburg, and not in the Diocese of Philadelphia; that he did not authorize or direct the Rev. Purcell to use said automobile, nor was he an occupant of said automobile, nor was he exercising any control in the use or operation of the same; that he is familiar with the rules and regulations, usages and canons, discipline and requirements of the Roman Catholic Church governing the holding, control, and disposition of church property within the Diocese of Philadelphia, and as well the rules and canons governing the duties, conduct, and authority of assistant pastors assigned within the diocese; that he is the highest church authority within said diocese upon these subjects; that the code of the canon law of the Roman Catholic Church and the statutes of the Diocese of Philadelphia govern the holding, control, and disposition of church property; that at the time of the alleged accident the rights, duties, and authority of assistant pastors assigned within the diocese were determined by said code and statutes; that according to the canon law the Rev. Purcell, as an assistant pastor of St. Joseph's Church, Ashland, could not make a sick call on his behalf outside the Diocese of Philadelphia; that no assistant priest may own, either wholly or partly, an automobile in his own name or in the name of another, nor may he drive an automobile except the parish car on official parish business, and that this regulation binds even beyond the limits of the archdiocese; that under said canon law he had no responsibility for the actions of the Rev. Purcell; that his function was to assign the

Rev. Purcell to said parish and permit him to remain there; that, according to said canon law, an assistant pastor, as soon as assigned, becomes subject to the pastor who instructs him and directs him in the care of souls, watches over him, and reports to the Ordinary (in this instance the Cardinal Archbishop of Philadelphia), concerning him; that the Rev. Purcell was never his agent, servant, or employe; that the canon law states the functions which are reserved to pastor and assistant pastor; and that among these functions is not included the mere applying of a relic to a sick person, which any layman can do. (At argument, it was stated by counsel that the Rev. Purcell was driving the automobile of a parishioner to a Danville hospital, where a relative of the parishioner was a patient, and that the purpose of the visit to the hospital was, inter alia, the applying of a relic to said patient.)

On May 1, 1944, counsel for St. Joseph's Roman Catholic Church of Ashland, filed an affidavit of defense as a statutory demurrer under section 20 of the Practice Act of May 14, 1915, P. L. 483. It was agreed between counsel for plaintiff and for defendants that the court act upon both the demurrer and the petition and rule at the same time; and leave was given counsel for plaintiff to file an additional brief.

The questions involved are:

1. Is St. Joseph's Roman Catholic Church of Ashland liable for the tort of the assistant pastor?

2. Is the Cardinal Archbishop of the Diocese of Philadelphia liable for the tort of said assistant pastor by reason of his episcopal office or by reason of his assignment of the assistant pastor to the said church?

3. Is the question of agency—whether or not the assistant pastor is the agent, servant, or employe of the cardinal archbishop—properly raised by petition and rule under the Act of March 5, 1925, P. L. 23?

The first question must be resolved in favor of the defendant church. It has long been recognized that a

religious and educational use is a charitable use: Canovaro et al. v. Brothers of the Order of Hermits of St. Augustine, 326 Pa. 76, 96. Property held for religious purposes must be considered to be held for charitable purposes. The doctrine of respondeat superior does not apply to a religious organization: Gable v. Sisters of St. Francis, 227 Pa. 254; Betts v. Young Men's Christian Association of Erie, 83 Pa. Superior Ct. 545; Bianchi v. South Park Presbyterian Church et al., 123 N. J. L. 325; Glaser v. Congregation Kehillath Israel, 263 Mass. 435, 161 N. E. 619.

In Fire Insurance Patrol v. Boyd, 120 Pa. 624, defendant in the court below was not a church but a fire company organized to save life and property from fire. Even under such circumstances it was held that defendant was a public charity and not subject to the doctrine of respondeat superior, and that funds contributed for a special charitable purpose could not be used to compensate injuries inflicted by the negligence of the agents and servants of the charitable organization. Mr. Justice Paxson in that case discusses at length what is a public charity, and says (p. 647):

". . . it would be against all law and all equity to take those trust funds, so contributed for a special, charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agents or servants of the patrol. It would be carrying the doctrine of respondeat superior to an unreasonable and dangerous length. That doctrine is at best—as I once before observed—a hard rule. I trust and believe it will never be extended to the sweeping away of public charities; to the misapplication of funds, specially contributed for a public charitable purpose, to objects not contemplated by the donors. I think it may be safely assumed that private trustees, having the control of money contributed for a specific charity, could not in case of a tort committed by one of their members, apply the funds in their hands to the payment of a judgment re-

covered therefor. A public charity, whether incorporated or not, is but a trustee, and is bound to apply its funds in furtherance of the charity and not otherwise. This doctrine is hoary with antiquity and prevails alike in this country and in England, where it originated as early as the reign of Edward V., and it was announced in the Year Book of that period."

As to the second question. The Act of June 20, 1935, P. L. 353, provides that whensoever any property, real or personal, has been bequeathed, devised, or conveyed to any ecclesiastical corporation, bishop, ecclesiastic, or other person, for the use of any church, congregation or religious society, the same shall be taken and held subject to the control and disposition of such officers or authorities of such church, congregation, or religious society, having a controlling power according to the rules, regulations, uses, or corporate requirements of such church, congregation, or religious society, which control and disposition shall be exercised in accordance with and subject to the rules and regulations, usages, canons, discipline and requirements of the religious body, denomination or organization to which such church, congregation, or religious society shall belong.

The testimony of the cardinal archbishop, in his answers to the interrogatories propounded, is that in his capacity as cardinal archbishop he is the highest church authority within the Diocese of Philadelphia upon the rules and regulations, usages and canons, discipline and requirements of the Roman Catholic Church government holding control and disposition of church property within the Diocese of Philadelphia.

The modern Model Code of Evidence, as adopted and promulgated by the American Law Institute in 1942, contains a rule (528, p. 293) that evidence of statements of matters of interest to persons engaged in an occupation contained in a list, register, periodical, or other published compilation, is admissible as tending

to prove the truth of any relevant matter so stated if the judge finds that the compilation is published for use by persons engaged in that occupation and is generally used and relied upon by them therein. The code comments that the principle of this rule is generally recognized and it is applicable to unofficially published law reports as well as to those officially published. The Code (rule 402, p. 202) defines an expert witness:

"A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know or understand the matter concerning which the witness is to testify requires special knowledge, skill, experience or training, and that the witness has the requisite special knowledge, skill, experience or training"; and the code comments that this rule states the well-settled law.

A Roman Catholic bishop is qualified to testify concerning the Roman Catholic law. Wigmore, in his treatise on the Anglo-American System of Evidence (3rd ed., vol. 2, sec. 564) says that in the leading cases of Vander Donckt v. Thellusson, 8 C. B. 812, and the Sussex Peerage, 11 Cl. & F. 85, it was settled that, besides professional persons, persons of any occupation which makes it necessary for them to give special attention to legal topics may be listened to upon those topics. In the latter case, where a Roman Catholic bishop, exercising certain judicial functions over marriages, was permitted to testify to the Catholic law of marriage, it was said (p. 134):

"The witness is in a situation of importance; he is engaged in the performance of important and responsible public duties; and connected with them, and in order to discharge them properly, he is bound to make himself acquainted with this subject of the law of marriage. That being so, his evidence is of the nature of that of a Judge."

In Vander Donckt v. Thellusson, Maule, J., said (p. 825): "All persons, I think, who practise a business or

profession which requires them to possess a certain knowledge of the matter in hand, are experts, so far as expertness is required."

Dean Wigmore then comments: "As to *English* law, then, these limits will not be transcended, *i. e.*, there must be an occupation, making necessary a familiarity with law.

"In the *United States* no such special limitation has been laid down; an even more liberal policy has generally been followed."

The cardinal archbishop's answers to said interrogatories are undisputed; plaintiff has waived the right to file cross-interrogatories.

So, in the proceeding before us, on petition and rule under the Act of 1925, it is undisputed that, according to the canon law of the Roman Catholic Church and the statutes of the Diocese of Philadelphia, the Rev. Purcell, as assistant pastor of St. Joseph's Church, could not lawfully make a sick call on behalf of the cardinal archbishop outside of the Diocese of Philadelphia; he could not lawfully drive an automobile except the parish car on official business; under said canon law and statutes, the cardinal archbishop had no responsibility for the actions of the Rev. Purcell as alleged in plaintiff's statement; the function of the said cardinal archbishop was to assign the Rev. Purcell to the said church and permit him to remain there, and as soon as assigned the Rev. Purcell became subject to the pastor of the church and that the Rev. Purcell was never the agent, servant, or employe of the cardinal archbishop.

In Canovaro et al. v. Brothers of the Order of Hermits of St. Augustine, supra, it was held that the decision of the proper ecclesiastical tribunal must be accepted by the civil courts unless it violates the civil law or is plainly in disregard of the church canons (p. 86). At page 88, Mr. Chief Justice Kephart, in discussing the Act of 1935, says:

"The effect of this statute is to make supreme the internal rules, regulations and usages of religious societies respecting the control of their property. The civil law no longer requires control to vest in lay members, but permits each individual church or society to determine for itself in what authorities this power shall vest. Property control, as well as all other ecclesiastical matters, is now governed by church law, since the impediment imposed thereto by the civil law has been removed. Churches are now no longer differentiated from other voluntary organizations in this respect. The Act of 1935 recognizes the binding effect of the internal laws of religious societies regarding the power of control and disposition of church property."

It would seem, then, considering the undisputed testimony upon the petition and rule, that the cardinal archbishop is not responsible for the tort of the assistant pastor; the assistant pastor is not the agent, servant, or employe of the archbishop, notwithstanding the latter's power of appointment. But can the court so declare as a matter of law on the petition and rule?

This query brings us to consideration of the final question: Is the question of agency properly raised by petition and rule under the Act of 1925, or should the question be raised by affidavit of defense upon trial? If, at trial, no testimony is introduced by plaintiff tending to prove the relation of principal and agent between the cardinal archbishop and the assistant pastor, and the depositions of the cardinal archbishop are read, as agreed, into the record, it would seem that a motion for a directed verdict in favor of the cardinal archbishop would properly be granted. But plaintiff avers in her statement that the assistant pastor "was the servant, agent, and employe of both the defendant, Dennis J. Dougherty, Cardinal Archbishop, and the defendant, St. Joseph's Roman Catholic Church of Ashland, Pa.", and that the cardinal archbishop "exercised over the said Rev. James J. Purcell, in connec-

tion with the latter's services as assistant pastor, the powers of supervision, control and removal". If plaintiff has any evidence of agency, she should be permitted to present that evidence at trial. She cannot be deprived of her right to offer testimony in support of the allegation of agency in her statement by proceedings such as are before us on the petition and rule.

We distinguish Midora et al. v. Alfieri et al., 341 Pa. 27. In that case two trucks collided and one struck minor plaintiff, who was standing on a sidewalk. Both truck owners, named as defendants, petitioned to have another party brought on the record as an additional defendant, as jointly or solely liable for the accident. The court held that defendants were not aided by a presumption of agency which they invoked and there was no other evidence, in the depositions taken under the Act of 1925, of ownership or operation, but affirmative evidence to the contrary. The court had no jurisdiction over the truck owner sought to be brought upon the record and could not compel its joinder as additional defendant.

In the instant case, the cardinal archbishop is on the record as one of the defendants. There are unequivocal averments by plaintiff in her statement of claim that the assistant pastor was the servant and agent of the cardinal archbishop, and that the cardinal archbishop exercised over the assistant pastor the powers of supervision and control. On this averment of agency, as on the other averments in her statement, plaintiff is entitled to be heard.

And now, June 26, 1944, for the reasons hereinabove given, the demurrer filed by St. Joseph's Roman Catholic Church of Ashland is sustained, and judgment is herewith entered in favor of the said defendant church upon the questions of law therein raised; the rule to show cause why the question of jurisdiction over the defendant, the cardinal archbishop, should not be determined preliminarily and why service of the

writ of summons in trespass on the said cardinal arch-
bishop should not be set aside and the return quashed
is discharged.

Let the action proceed with Anna Holda as plaintiff,
and the Rev. James J. Purcell and Dennis J. Dough-
erty, Cardinal Archbishop of Philadelphia, Pa., as de-
fendants.