FRANCIS B. SEARS, trustee, *vs.* ATTORNEY GENERAL & others.

Suffolk.     December 3, 1906. — January 3, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, & RUGG, JJ.

*Charity.     Trust.     Religious Society.*

A fund of which the income is to be devoted to religious uses in connection with a particular church is a public charity. Following *Osgood* v. *Rogers,* 186 Mass. 238, and declaring that anything to the contrary in *Parker* v. *May,* 5 Cush. 336, and *Old South Society* v. *Crocker,* 119 Mass. 1, has been overruled by the later decisions.

A fund was established by the contributions of persons connected with a particular church and religious society, the income of which was to be used to provide for the widow and minor children of a deceased bishop and rector of that church, then to be used for the support of the widow or orphan children of any rector of the same church, and, if by accumulations the fund should yield an income of more than $1,000, then funds were to be created for the widows and minor children of the assistant minister of the same church, and next for the support of the dignity of the bishop of Massachusetts when such bishop should be the rector of the same church, and then for the use and benefit of the bishop, rector, assistant minister or such other object connected with the same church as the wardens and vestry thereof for the time being might deem advisable. *Held,* that the fund constituted a public charity, and that on a proper case being made out the court would direct its administration *cy pres.*

KNOWLTON, C. J.     This case was heard before a single justice and reserved for the full court upon the question "Whether the widow and orphans' fund of Trinity Church in the city of

Boston is a fund held upon such a charitable trust that it may, on a proper case being made out, be directed by the court to be applied *cy pres.*" The facts proved and the scheme proposed at the hearing are not reported, and we have no occasion to consider anything but the question presented by the reservation.

This fund was originally raised by a subscription of persons connected with Trinity Church in 1804, and was stated to be " for the benefit of·the widows and orphan children that may be left by the future ministers of this church." Since then it has increased greatly by accumulation. In another part of the subscription paper, after referring to the annuity for the benefit of Mrs. Anne Parker, widow of a deceased bishop and rector of the church who was primarily to receive the income, it was said that after her decease the fund was "to be directed to the benefit of the successive clergymen of said parish," etc. At a meeting of the subscribers held on December 30, 1804, a scheme for the management and use of the fund was voted, providing that the income should be used, first, for the benefit of the widow and minor children of the late Bishop Parker, and then to be paid to the widow or orphan child or children of any rector of the church, and if, by accumulation, the fund should become so large as to yield an annual income of more than $1,000, new funds should be created from the accumulation as follows : First, one for the widows and minor child or children of the assistant minister of the church, and then one for the. support of the dignity of the bishop of Massachusetts when such bishop should be the rector of Trinity Church, and then one for the " use and benefit of the bishop, rector, assistant minister, or to such other object connected with this church, as the wardens and vestry thereof for the time being, may in their judgment deem fit and advisable." Provisions were made as to the amounts that might be expended for each of these objects, in succession, before the application of any money to the creation of the next fund mentioned in order, and other details as to the management and use were prescribed, which we need not consider. The payments that may be made to widows and minor children were limited to cases in which they had no considerable income from other sources, and these payments were not to

exceed $1,000 per year to the widow and minor children of the rector, and $800 per year to the widow and minor children of the assistant minister.

By the St. 1830, c. 83, Trinity Church was incorporated, and provision was made in § 4 of the act for the appointment of a trustee or trustees to hold and manage this fund, conformably to the directions given in the vote already referred to.

As a general proposition, a gift made for the support of needy widows and orphans of a particular class is an eleemosynary public charity. This has been established by so many cases, and with such full discussion, that there is no occasion to consider the reasons on which the rule is founded. *Saltonstall* v. *Sanders*, 11 Allen, 446, 457. *Jackson* v. *Phillips*, 14 Allen, 539, 551. *Burbank* v. *Burbank*, 152 Mass. 254, 256. *Minns* v. *Billings*, 183 Mass. 126, 129. *Attorney General* v. *Goulding*, 2 Bro. C. C. 428. *Collinson* v. *Pater*, 2 Russ. & Myl. 344. *Bristow* v. *Bristow*, 5 Beav. 289. *Thompson* v. *Corby*, 27 Beav. 649. *Thompson* v. *Thompson*, 1 Coll. C. C. 381, 392.

The gift in the present case is primarily to persons of a class, and not to designated individuals. The members of this class, for all time, are to take. The class, considered strictly, is very small, and the only question is whether the object is so general and indefinite as to be deemed of common and public benefit, and so a public charity. It includes the families of deceased clergymen of the Protestant Episcopal Church, and the selection of them is limited to those in which the husband or father was a rector or assistant minister of Trinity Church. In the course of many years the number benefited might be large, and while the number ultimately receiving a direct benefit is limited to those connected with this religious society, the larger class of clergymen of the same religious faith are indirectly helped by the chance that they may be chosen to one of these places and their families receive assistance from this fund. In *Attorney General* v. *Old South Society*, 13 Allen, 474, 475, 476, 492, it appears that a fund was established "for the support of the widows and fatherless children of ministers of the church," and although it is not expressly stated that this was a public charity, the decision of the case seems to have been upon that assumption. In *Kent* v. *Dunham*, 142 Mass. 216, a devise to trustees, expressed to be

" for the aid and support of those of my children and their descendants who may be destitute, and in the opinion of said trustees need such aid," was held to be not a public charity, and void. We infer, although the statement in the opinion is not in these terms, that one reason of the decision is that the class was not sufficiently large and indefinite to make the gift of common and public benefit.

We think that there are strong reasons for holding that the fund in the present case is a public charity, viewed solely in its eleemosynary aspect; but we do not decide this, for we think the plaintiff's other contention, that it is good as a religious charity, should be sustained.

When the different provisions of the vote of the subscribers are considered, it becomes plain that their principal object was religious. They were providing for the encouragement and support of the rector by establishing a fund which would ensure the proper maintenance of his wife and minor children if he died and left them without property. This should be regarded as a gift for the support of the rector. *Anon.* 2 Vent. 349. *Attorney General* v. *Cock,* 2 Ves. Sr. 273. *Doe* v. *Aldridge,* 4 T. R. 264. *Attorney General* v. *Lawes,* 8 Hare, 32. After making provision for the families of the rector and the assistant minister, the fund, if large enough, was to be used for the bishop of Massachusetts when a rector of that church, and then, if its accumulations became sufficient, it was to be applied to the use and benefit of the bishop, rector, assistant minister, or to other objects connected with the church, in the discretion of the wardens and vestry. In general terms, the money was to be devoted to religious uses in connection with this church.

Is a gift of money for such a use a public charity? There have been decisions and dicta in this Commonwealth, which, if they embodied the whole law on the subject, would require an answer in the negative. But these are few. They were induced by peculiar conditions, and they are at variance with the general course of decision elsewhere and with the later decisions of this court. The question was expressly decided in *Osgood* v. *Rogers,* 186 Mass. 238, in which we find this language: " Whatever doubt may have existed formerly, it must be regarded as now settled in this Commonwealth by more recent decisions that a

gift to a church generally creates a public charity. *McAlister* v. *Burgess*, 161 Mass. 269. *Bartlett, petitioner*, 163 Mass. 509. *Minns* v. *Billings*, 183 Mass. 126. If a gift to a church generally creates a valid public charity, we can see no good reason why a gift to the pastor and deacons of a church as trustees and their successors forever for the support of the church in its religious worship should not also be held to create a public charitable trust." In *Minns* v. *Billings, ubi supra*, although it does not appear in the published report, several of the gifts sustained as public charities were for the support of religious worship in churches. The doctrine is supported by some of our older cases as well as by recent ones. In *Earle* v. *Wood*, 8 Cush. 430, 445, 448, Chief Justice Shaw said, " All gifts and grants in trust, for the support of public worship and religious instruction, or for the advancement of piety, morality, and useful education, are valid as charitable trusts, and will be carried into effect by this court as a court of equity." The trust was sustained as " being for the uses of a religious body, to support public worship and religious instruction, and thus a recognized charity." A similar decision was made for the same reasons in *Dexter* v. *Gardner*, 7 Allen, 243.

The decision in *Attorney General* v. *Federal Street Meetinghouse*, 3 Gray, 1, 49, was put upon the ground that the purpose " was to constitute a religious society, for the use of the members and proprietors who might be pewholders, or of them with other members, according to circumstances," and not for the public. This ground of decision, which seems to have been given weight in some of the cases, is not according to the conditions existing in modern churches. Most churches are not only open to the public, but their proprietors seek to promote religion and morality among the people generally. In *St. Paul's Church* v. *Attorney General*, 164 Mass. 188, 197, it was said that " A gift to a church *eo nomine* is a gift to a charity." In *Attorney General* v. *Union Society*, 116 Mass. 167, a trust for the maintenance of a minister and public worship in a mission chapel is treated as a valid charity.

So far as there is anything in *Parker* v. *May*, 5 Cush. 336, in *Old South Society* v. *Crocker*, 119 Mass. 1, or in other cases in this court, at variance with the decision in *Osgood* v. *Rogers*,

*ubi supra,* they must be considered as overruled by the later decisions.

We are of opinion that the question reserved must be answered in the affirmative.

*Decree for the plaintiff.*

*John Chipman Gray,* (*Roland Gray* with him,) for the plaintiff.

No counsel appeared for the defendants.