CHARLES T. DAVENPORT & another *vs.* ATTORNEY
GENERAL & others.

Franklin.    February 9, 1972. — March 8, 1972.

Present: CUTTER, SPIEGEL, QUIRICO, & BRAUCHER, JJ.

*Trust,* Charitable trust.    *Probate Court,* Jurisdiction.    *Corporation,*
Charitable corporation, Liquidation.

Where a testator made a gift of the residue of his estate to trustees in
trust to be "expended for the relief of aged needy and deserving
women and couples . . . native born inhabitants of Greenfield, Leyden
and Bernardston . . ." and upon the dissolution many years later of
a corporation formed, as permitted in the testator's will, to carry
out the provisions of the trust the accumulated principal and in-
come amounted to $150,000 but the trustees had expended only
$4,852.54 for the purpose of the trust, it was error for a judge of
the Probate Court, who found that the expenditure did not consti-
tute a substantial application of the income of the trust and held
that a gift over to the testator's legatees was in violation of the rule
against perpetuities, to declare that the trust had failed and to rule
that the corporation's funds be held on a resulting trust for the
testator's heirs; inertia, mismanagement or neglect of trustees will
not work a forfeiture of a charitable trust.    [377–378]
By reason of G. L. c. 215, § 6, as amended, the equity jurisdiction of
the Probate Court was sufficiently broad to permit that court to
appoint a receiver to liquidate a charitable corporation.    [379–380]

PETITION IN EQUITY filed in the Probate Court for the
county of Franklin on May 1, 1967.

The case was heard by *Keedy,* J.

*James J. Kelleher,* Assistant Attorney General, for the
Attorney General.

*William H. Welch* (*Melvin G. Barclay* with him) for
the petitioners.

CUTTER, J.    This amended petition seeks declaratory
relief in the Probate Court concerning the interests of
various persons in the charitable residuary trust arising

under the earlier of two codicils to the will of George W. Davenport (the testator), who died April 9, 1905. A probate judge overruled demurrers and, after hearing, entered a decree declaring the rights of the parties in a manner adverse to the interests of the Attorney General. He appealed. The evidence is reported. There is a report of material facts [1] on the basis of which, for the most part, the facts below are stated.

The gift now before us for consideration was made by the testator's first codicil (dated February 22, 1900) which revoked the residuary provision of his will dated June 2, 1896. The 1900 codicil made the following provision: [2] "All the . . . residue . . . I give . . . to . . . [three named persons] in trust, the income thereof to be expended for the relief of aged needy and deserving women and couples–husband and wife–native born inhabitants of . . . Greenfield, Leyden, and Bernardston, resident therein, and not receiving aid or support as paupers." [3]

---

[1] The petitioners requested the appointment of a stenographer under Rules 18 and 19 of the Probate Court (1959, Rule 19, as amended 1964). See G. L. c. 214, § 24. This was done. The Attorney General, upon claiming an appeal, requested that the evidence be included in the record. The judge ordered that this be done. Nothing in *Silke* v. *Silke,* 325 Mass. 487, or *Maraghey* v. *Tarpey,* 334 Mass. 157, prevents the use of the transcript on appeal by any party (even one who has not requested the designation) where a stenographer in fact has been designated by the judge.

[2] The comparable provision of the 1896 will left the residue to "Franklin. County Public Hospital . . . if the same is in effective and successful operation and so doing business at my decease; but in case . . . [the] hospital is not then in such operation or so doing business, then . . . I devise . . . [the] entire . . . residue of my estate to all the other . . . legatees herein named, to be divided among them . . . proportionally according to the amount of their respective legacies and in the same manner in reference to issue and otherwise as said legacies are made."

[3] The residuary trust then proceeded: "[A] It being my desire that a 'Home' for such persons may be established in . . . Greenfield . . . I authorize my said Trustees, in their discretion, and at such time as they deem it advisable and expedient, to invest a limited part of the principal received by them, in property real and personal to be used for that purpose, but no part of the principal shall be otherwise used or expended. [B] Said trustees are to determine what persons are to receive aid and assistance and on what terms and conditions and how long it shall continue, and shall make suitable rules and regulations for the carrying out of the purposes of these provisions of my will. . . . [C] Said trustees may become incorporated for the purposes of carrying out these provisions of my will, if deemed advisable by them, in

Testamentary trustees were appointed in 1909 and received from the testator's executors $17,171.25. The trustees filed twenty-two accounts, the last allowed on August 7, 1945, after notice. On April 11, 1945, a charitable corporation was formed (see par. [C] of the residuary trust, fn. 3) by the then trustees pursuant to St. 1945, c. 203, §§ 1 and 2, "for the purpose of erecting, establishing, managing, and directing a home for aged women and couples, native born inhabitants of . . . Greenfield, Leyden, and Bernardston and resident therein."

While the fund was administered by the "trustees, the total . . . income accumulated was $52,423.40. Of this total income, $260 . . . was actually expended for the purposes of the trust . . . in aiding persons who qualified under the provisions of the . . . trust. During this period the trustees were accumulating the income until they had sufficient funds for the building, maintenance, and operation of a home. The accumulation for this purpose was a substantial application of the income for the purposes of the trust."

On "April 11, 1945 . . . the . . . trustees had determined that the time was proper for the establishment of a home in Greenfield. The . . . trustees, upon the allowance of the twenty-second and final account, paid over to the corporation a total of $69,701.42 of which $17,538.02 represented principal and $52,163.40 represented accumulated income. . . . After the incorporation, real estate was purchased as a site for the proposed home. Shortly

---

which event they are authorized to convey the entire . . . property received by them as such trustees . . . to such corporation, the same to be administered by it in the same manner as by said trustees and according to the true intent and purposes herof. [D] If from any cause the purposes for which this . . . residue trust fund is created cannot legally be carried out or accomplished, or the fund is not used or the income is not applied substantially in accordance with the provisions of my will, then . . . said . . . residue is to go to all the other legatees named in my will ratably . . . according to the amount of their respective legacies . . .." The letters in brackets inserted in the foregoing excerpt are for convenient reference to the material immediately following such letters respectively. The second codicil is not relevant to the present problem, except that it ratified the earlier will (and also the earlier codicil, although this is not said expressly in the second codicil).

thereafter, it became apparent that . . . building . . . a home was not feasible because of shortages of building materials. The trustees of the corporation then started to use some of the income for the purposes of aiding aged, needy, and deserving women and couples, husband and wife, who qualified for such aid under the terms of the trust. This was a deviation from the purposes stated in the" 1945 special act authorizing incorporation but not from the terms of the testamentary trust.[4]

The aggregate amount expended by the corporation in aiding individuals was $4,842.54, which the probate judge found "did not constitute a substantial application of the income for the purposes of the trust." This finding seems to have been based upon the fact that, during the period from 1945 to March 24, 1964, when the corporation was dissolved, at least $50,000 "in disposable income was received." During the life of the corporation, the value of its assets increased from $69,701.42 to about $150,000. The probate judge was not able to determine how much of this sum was principal and how much was accumulated income.

In 1959, the corporation affairs "came to a complete halt" by reason of difficulties encountered by the trustees. Because of failure to file annual reports, the corporation was dissolved by order of a single justice of this court on March 24, 1964. There were various deficiencies in management.

The probate judge determined that the residuary clause "created a valid and enforceable charitable trust and [that] there now are and have been during all of the time the trust has been in existence persons within the towns of Greenfield, Leyden, and Bernardston who could qualify for aid under the provisions of the trust" as "aged, needy, and deserving women and couples, husband

---

[4] One recipient in the years 1945 to 1949 was paid sums varying between $275 and $697.47. In 1949 one other recipient received $200 and a third received $100. From 1945 through 1949 these were the only recipients, and no other amounts were paid from income for the purposes of the trust in those years. Further payments were made, apparently in some amounts, in subsequent years, "as late as 1959."

and wife, who are native born inhabitants of" those towns residing therein "whose funds are meager and who are not receiving relief or medical aid under any welfare program." The judge further found that the "income from the trust from 1946 to the time that the corporation was dissolved has not been substantially applied to the purposes of the trust." He then concluded (erroneously, as we rule below) that the "corporation's funds are held upon a resulting trust for . . . the [testator's] heirs . . . the gift over to the [testator's] legatees . . . being in violation of the rule against perpetuities."

The petitioners assert (a) that the residuary trust has failed according to its terms because the income has not been applied substantially in accordance with the trust provisions, and (b) that, although the gift over violates the rule against perpetuities, the charitable trust has terminated and the trust assets must be held upon resulting trust for the testator's estate. The Attorney General asserts the continuing validity and enforceability of the charitable trust.

1. We need not determine whether the residuary trust exhibits a general charitable intent.[5] See *Rogers* v. *Attorney Gen.* 347 Mass. 126, 131–133 (which, however, restates the well established rule that a liberal construction is to be given to charitable donations). The probate judge's findings themselves establish that the trust can still be carried out in accordance with its terms. There remain available eligible beneficiaries of the testator's charitable bounty in the towns designated by him. The

---

[5] In the view we take of the situation, it also is unnecessary to reach now the Attorney General's contentions (1) that the provisions of par. [D] (see fn. 3, *supra*) of the residuary trust merely expressed the intention of the testator that the trust be valid at its inception (see *City Bank Farmers Trust Co.* v. *Carpenter,* 319 Mass. 78, 79–81) ; and (2) that, in any event, because the gift over is void, the consequence is that the trustees hold the trust estate free of any divesting condition subsequent. See Scott, Trusts (3d ed.) § 401.6, p. 3158. We see no basis for viewing the provisions of par. [D] as creating a trust estate only "so long as" the funds were expended properly, subject to reverter to the testator's heirs at law. Cf. *Brown* v. *Independent Baptist Church of Woburn,* 325 Mass. 645, 647; Restatement 2d: Trusts, § 401, comment c, § 413.

trust thus is still susceptible of continued enforcement, and there is no necessity to resort to an application of the trust estate cy pres.

2. The petitioners' principal reliance is the provision already quoted (residuary trust, par. [D], fn. 3, *supra*) providing for a gift over if "from any cause the purposes for which this . . . residue trust fund is created cannot legally be carried out . . . or the fund is not used or the income is not applied substantially in accordance with . . . my will." It does not appear to be claimed (a) that the trust at its inception could not have been carried out legally, or (b) that the gift over is valid. The probate judge correctly ruled that the trust was a valid charitable trust at the time the trustees were first appointed and that the gift over was void. The crucial issue is whether the trustees' failure to make substantial expenditures for the charitable purposes over a period of years, their formation of a corporation to build a "home" (with statutory powers somewhat narrower than the original residuary trust provisions), and their management of the corporation's affairs (because of difficulties affecting the trustees themselves) in combination have caused a termination of the charitable trust.

The general rule is that neglect in the management of a trust or a breach of trust will not give rise to a resulting trust for the estate of a testator or a settlor. See *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 451 ("Generally it is true that no length . . . of diversion from the plain provisions of a charitable foundation will prevent its restoration to its true purpose," quoting an earlier case) ; Restatement 2d: Trusts, § 401, comment a; Scott, Trusts (3d ed.) § 401.1. See also *Attorney Gen.* v. *Lowell,* 246 Mass. 312, 323–324; *Judkins* v. *Hyannis Pub. Library Assn.* 302 Mass. 425, 427; *Bradway* v. *Shattuck,* 325 Mass. 168, 172; *Trustees of Dartmouth College* v. *Quincy,* 357 Mass. 521, 532–533. Mere delay in making available or in expending trust funds for a charitable purpose will not defeat a charitable trust. See *Miller* v. *Parish of the Epiphany, Winchester,* 302 Mass. 323, 327–

328. Similar consideration should lead to avoiding the forfeiture of a charitable trust because of the inertia, misconduct, or maladministration of the trustees. This particularly should be so where any forfeiture would accrue to the benefit of the heirs at law or next of kin of the testator. In the present case it appears ( from a family tree in evidence) that the heirs and next of kin include one or more persons who have been or are closely related to trustees either of the trust or the corporation. We conclude that the probate judge incorrectly relied on the provision of par. [D] (fn. 3) regarding nonuse of the fund or its income. That provision, we think, cannot justify a forfeiture of a trust, because of mismanagement by the trustees. The subsidiary findings do not either justify or necessitate any resulting trust for the testator's estate, at least at this time.

A charitable trust ordinarily will not be permitted to fail or to be thwarted for want of suitable and diligent trustees. In circumstances such as appear here, any forfeiture of the trust should be prevented by the appointment of appropriate new trustees to receive the assets of the corporation and to hold them upon the terms of the charitable residuary trust. See *Binney* v. *Attorney Gen.* 259 Mass. 539, 544; *Kirwin* v. *Attorney Gen.* 275 Mass. 34, 41–43; Restatement 2d: Trusts, §§ 388, 397; Scott, Trusts (3d ed.) §§ 388, 397, 397.1.

3. The situation is not affected by the formation of the corporation. Use of a corporation was expressly authorized (see point [C] of the trust as quoted in fn. 3), by the terms of the residuary trust. See *Attorney Gen.* v. *Olson,* 346 Mass. 190, 196–197; Scott, Trusts (3d ed.) § 385A. Appropriately the corporate purposes and powers should have followed more closely the purposes stated in the residuary trust, but no charitable interest appears to have been harmed by the failure so to provide. This record discloses no expenditure of funds by the corporation for purposes other than those authorized by the residuary trust (see pars. [A] and [B] of the trust, fn. 3).

In 1945, when the corporation was formed, the con-

struction of a "home" apparently was thought to be im-
minent. The probate judge correctly ruled that accumu-
lation until 1945 of income for construction was a proper
use of that income. Since 1945, however, the idea of
building a home has been abandoned because of doubts
about the adequacy of income to maintain one. There
thus seems to be little further use for the corporation.
Its liquidation now is appropriate. The corporate funds,
however, cannot be held upon a resulting trust for the
testator's estate. New trustees are to be appointed to
administer those funds upon the terms of the original
residuary trust.

4. The Attorney General contends that there was no
jurisdiction in the Probate Court to appoint a receiver to
liquidate the charitable corporation. He relies upon G. L.
c. 155, § 52, placing such jurisdiction in equity in this
court and in the Superior Court. The contention gives
too little weight to the recent grant to the Probate Courts
of general jurisdiction in equity. See G. L. c. 215, § 6
(as appearing in St. 1963, c. 820, § 1, and as amended
through St. 1970, c. 888, § 24). Although this court
construes strictly (see *Sebastian* v. *Carroll,* 353 Mass.
465, 467) statutory provisions extending the equity jur-
isdiction of the Probate Courts, we find no pertinent ex-
ception to the general grant of jurisdiction made by
c. 215, § 6, as amended. Where a charitable corporation
has been formed to carry out a testamentary charitable
trust, the Probate Court is certainly not an inappropriate
forum (and may be the most convenient court) for liqui-
dating the corporation and distributing the assets to new
trustees appointed to carry out the original charitable
trusts.

The Attorney General is now the only person interested
in the enforcement of the valid residuary trust. See
*Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444,
450–451; Scott, Trusts (3d ed.) §§ 391, 392. His views,
therefore, concerning the forum for administration of the
receivership are entitled to special consideration. A
temporary receiver has already been appointed in the

county court, because of a stay by that court of the Probate Court's decree under review. If the Attorney General wishes that receivership to be made permanent instead of continuing the receivership in the Probate Court, he may request that a single justice so order, in his discretion. If no such order is sought within thirty days of the receipt of the rescript in the Probate Court, and thereafter allowed, the appointment by the county court shall be vacated, and the receivership may proceed in the Probate Court. If the receivership in the county court is made permanent, the receivership in the Probate Court shall be terminated as expeditiously and inexpensively as is feasible.

5. The Attorney General contends that the decree appealed from incorrectly allowed various parties costs and expenses, because there was no hearing before these items were allowed. See *Perry* v. *Perry*, 339 Mass. 470, 483–486. He also contends that no costs and expenses should be allowed to the petitioners and their counsel who have sought to set aside a valid charitable trust. This, he says, was the course followed in *Bradway* v. *Shattuck*, 325 Mass. 168, 173, after the decision in *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444. The record is not sufficiently inclusive to permit us to pass on this issue. The allowances in the decree under review are to be reconsidered, and any further allowances are to be made, in the light of this opinion and of the circumstance that any allowance in fact made will deplete the assets of a valid charitable trust.

6. The decree of the Probate Court dated April 14, 1970, is reversed. The case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*