FRANK WILSON, trustee, petitioner.

Suffolk.    February 10, 1977. — April 5, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Trust,* Charitable trust, Appointment of trustee.    *Attorney General.*

In an action in a Probate Court under G. L. c. 203, § 5, seeking the appointment of a successor trustee of certain charitable trusts, the judge was not required to accept as successor a person proposed by

the Attorney General, even though that person was qualified, and he did not abuse his discretion in appointing a qualified person proposed by the other trustees. [327-330]

PETITIONS filed in the Probate Court for the county of Suffolk on August 19, 1975.

The cases were heard by *McLellan*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*S. Stephen Rosenfeld*, Assistant Attorney General, for the Attorney General.

*Robert D. City* (*Paul B. Sargent* with him) for the petitioner.

KAPLAN, J. The Attorney General appeals from decrees of a judge of the Probate Court for Worcester County appointing Mr. Thomas F. Donohue as successor trustee of certain charitable trusts. The cotrustees of these trusts had proposed Mr. Donohue to the judge for appointment; the Attorney General had proposed Mr. Richard N. LaSalle. It is the Attorney General's contention that in the circumstances the judge was bound to appoint Mr. LaSalle. We do not accept the contention, and we affirm the decrees.

Lotta M. Crabtree died on September 25, 1924, leaving a will that set up a number of charitable trusts, of which seven, with a present capital of around $2,000,000, are still active.[1] The will named three persons who were to act as executors and trustees, but it made no provision for securing appointment of successors for vacancies occasioned by resignation or death of trustees. As vacancies have occurred over the years, the active trustees have applied to the court under G. L. c. 203, § 5, which states: "If a trustee under a written instrument declines, resigns, dies or is removed before the objects of the trust are accom-

---

[1] These trusts are denominated Lotta Hospital Fund, Lotta Educational Fund, Lotta Dumb Animal Fund, Lotta Theatrical Fund, Mary A. Crabtree Fund (gifts to the needy during Christmas season), Lotta Fund for Aiding Discharged Convicts, and Lotta Agricultural Fund.

plished and no adequate provision for filling the vacancy is made therein the supreme judicial court, the superior court or the probate court shall, after notice to all persons interested, appoint a new trustee to act solely or jointly with the others as the case may be."

On July 7, 1975, Mr. John J. O'Hare, Jr., then the senior trustee, having served for twenty-seven years, resigned his office. Accordingly the two other trustees applied to the Probate Court under the statute, proposing the appointment of Mr. Donohue.[2] Notice of the application was given to the Attorney General. See G. L. c. 12, § 8G. He appeared and on his part proposed Mr. LaSalle. Crossmotions were made for summary judgment, supported by papers describing the qualifications of the respective candidates. The judge received memoranda and heard argument. It was freely conceded, and the judge accepted, that both persons proposed were amply qualified for the position. The judge denied the motions for summary judgment and entered the decrees appointing Mr. Donohue.

In naming a trustee to fill a vacancy where the instrument does not prescribe a method, the court has a wide discretionary range. See 2 A. Scott, Trusts § 108.2 (3d ed. 1967). This is not denied as a general proposition, but the Attorney General says that we have here a special situation where his proposal of a person as successor trustee, if that person is qualified, must be accepted by the court.

The argument rests in the first place on *Lovejoy, petitioner*, 352 Mass. 660 (1967). That was a testamentary trust in which the office of trustee fell vacant through the death of the trustee named in the will; a trustee to serve in succession had been named in the will, but he had died previously. The will did not state a method for filling the vacancy in the event that had occurred. All the beneficiaries of the trust joined in applying to the court for the appointment of Lovejoy — the beneficiaries of age assented personally, those not of age or unascertained or

---

[2] Mr. Timothy J. Driscoll died pending the application, leaving Mr. Frank Wilson as the sole trustee applying.

unborn assented through a guardian ad litem designated
to protect their interests. The judge of the Probate Court
nevertheless appointed another person as trustee. Both
Lovejoy and the court's appointee were qualified for the
post. On appeal to this court, we held that in the circum-
stances of the case the judge was not merely bound to give
weight, as usually he would be, to the wishes of the bene-
ficiaries; as all those interested as beneficiaries agreed on
a qualified person to serve as trustee, the judge had abused
his discretion in appointing another, even though that
other was qualified: that was so at least in the absence
of strong contraindicative factors.[3] Cf. *Anderton* v. *Patter-
son*, 363 Pa. 121, 127 (1949); *McCaskey's Estate*, 293 Pa.
497, 501 (1928); Restatement (Second) of Trusts § 108,
Comment d (1959); 2 A. Scott, *supra*, § 108.4.

The Attorney General argues that the *Lovejoy* case con-
trols here because he represents all the beneficiaries of the
Crabtree trusts, that is, the members of the public, and the
person he sponsors is admittedly qualified. It is true that
the Attorney General is charged with representing the
interest of the public in the administration of charitable
trusts. See *Davenport* v. *Attorney Gen.*, 361 Mass. 372,
379 (1972); *Shattuck* v. *Wood Memorial Home, Inc.*, 319
Mass. 444, 450-451 (1946); *Burbank* v. *Burbank*, 152
Mass. 254, 256 (1890); G. L. c. 12, § 8. But the parallel
claimed with the *Lovejoy* case is seen on analysis to be
little more than merely verbal.

---

[3] The court said (352 Mass. at 665): "In our view, where all parties
in interest agree on the appointment of a particular successor trustee
in the circumstances here presented and the nominee is not justifiably
found to be unsuitable, the Probate Court, in the absence of facts
strongly indicative of the necessity of a different appointment, should
follow the wishes of the parties principally concerned. The desirable
expansion of the trust device in family estate planning is largely de-
pendent upon the mutual confidence of trustees and beneficiaries. The
suitability of any prospective trustee is, of course, for the court, and its
determination relative thereto is not to be governed by the unanimity
of beneficiaries on the identity of a successor trustee. When, however,
the beneficiaries unite on a qualified trustee, as they have in this case,
we hold it to be arbitrary and capricious action and an abuse of discre-
tion for the court to appoint a stranger to the parties concerned."

In *Lovejoy* the trust contemplated but one trustee; there was no trustee on the scene; the appointee was to serve as sole trustee. In the present case the trusts provide for plural trustees; two active trustees with experience were present, urging a person of their own choice to fill the panel; and the appointee would be working side by side with these two as cotrustee. In these conditions it would be folly for the judge not to pay attention to the judgment of the active trustees as to who their colleague should be, even to the extent of agreeing with that judgment in the end.[4]

Furthermore, the *Lovejoy* case involved a private, not a charitable trust, and a bridge between the two cannot be built simply by saying that the latter has a larger number of beneficiaries, all of whom, however, are represented by the Attorney General. In the case of a private trust, the compatibility of the trustee with the individual beneficiaries, his sensitivity to their needs and wishes, is highly important. See n.3 (quotation from *Lovejoy*); cf. *Cooney* v. *Montana*, 347 Mass. 29, 39 (1964). The same kind of intimacy is not needed, and perhaps is not wanted, as between the trustee of a charitable trust and the Attorney General.

The Attorney General then says that, quite apart from the *Lovejoy* case, he is entitled to have his choice of a qualified trustee confirmed by the court for the very reason that he is charged with responsibility for the due administration of charitable trusts. Acknowledging the Attorney General's role, as strengthened by the legislation of 1954

---

[4] That a court should consider the active trustees' judgment about the appointment of a cotrustee is indicated by the fact that those trustees are parties entitled to apply for such an appointment. Restatement (Second) of Trusts § 108, Comment c (1959).

In theory a trustee is personally liable only for his own acts, not those of his cotrustees in which he does not participate. See 3 A. Scott, Trusts §§ 224-224.6 (3d ed. 1967). In practice he has reason to concern himself with the ability and sagacity of his cotrustees not only out of regard for the proper functioning of the trust but to avoid any threat of personal liability stemming from situations for which his colleagues may in fact have been responsible.

establishing a division of public charities in his depart-
ment,[5] we do not think it provides a basis for displacing
the court's traditional discretion under G. L. c. 203, § 5,
with respect to charitable trusts. Rather the relation be-
tween the Attorney General and the court under § 5
should be a cooperative one in which the Attorney Gen-
eral offers his views to the court and the court gives them
the special consideration due to his official expertness and
impartiality. *Davenport* v. *Attorney Gen.,* 361 Mass. 372,
379 (1972); cf. *Brookline* v. *Barnes,* 327 Mass. 201, 207-
208 (1951).

Our conclusion is that the matter lay within the judge's
discretion, and there is no ground here for a claim of abuse
of discretion.

When proceedings under § 5 are contested, the judge in
deciding the matter should comply with Mass. R. Civ.
P. 52 (a), 365 Mass. 816 (1974) (findings by the court),
thus explaining the basis on which he is going. See G. L.
c. 215, §§ 6, 11; cf. *Cooney* v. *Montana,* 347 Mass. 29, 38
(1964). That was not done in the present case, but since
no witnesses were called, and, as indicated, the record
plainly shows that the judge did not exceed the bounds
of his discretion, we need not reverse for action under rule
52 (a). See 9 C.A. Wright & A.R. Miller, Federal Practice
and Procedure § 2577, at 699-702 (1971).

*Decrees affirmed.*

---

[5] St. 1954, c. 529, § 1, inserting G. L. c. 12, § 8B, among other pro-
visions.