CONGREGATIONAL CHURCH OF CHICOPEE FALLS *vs.*
ATTORNEY GENERAL; VALLEY BANK and TRUST
COMPANY, trustee, intervener.

Hampden. September 14, 1978. — November 2, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Corporation*, Charitable, Religious. *Charity. Jurisdiction*, Dissolution
of charitable corporation. *Superior Court*, Jurisdiction. *Supreme
Judicial Court*, Jurisdiction. *Words*, "Charitable," "Religious,"
"Public charity."

The voluntary dissolution of a church organized under G. L. c. 67 as
a religious corporation fell under c. 180, § 11A, which required that
the action be brought in the Supreme Judicial Court; an action for
such dissolution brought in the Superior Court should, therefore,
have been dismissed for want of jurisdiction. [547–550]

CIVIL ACTION commenced in the Superior Court on September 25, 1975.

The case was heard by *Tisdale*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Caroline W. Spangenberg* (*Francis D. Dibble, Jr.*, with her) for Valley Bank and Trust Company, trustee.

*Mary Joann Reedy*, Assistant Attorney General, for the Attorney General.

KAPLAN, J. Having lost many of its members, sold its building to the Chicopee Redevelopment Authority, and failed in trying to find another site or to arrange a merger with another church, the Congregational Church of Chicopee Falls, a corporation, determined by vote of its members to seek dissolution, with the plan to transfer its trust funds to the First Congregational Church of Chicopee, and to distribute its other funds to that church and three

other local churches in stated percentages. Petition for dissolution was filed on September 25, 1975, in the Superior Court in Hampden County. General Laws c. 180, § 11, was cited as authority for the petition. The Attorney General, made a party, accepted service and assented to the dissolution with the accompanying plan. On July 2, 1976, the judge made a final order of dissolution, and a corresponding final judgment was prepared, but not entered on the docket.

Two weeks earlier, on June 18, 1976, unknown to the church or the court at the time, a 10% interest in the residue of the Arthur A. White Revocable Trust had vested in the church upon the death on that date of the wife of the settlor. As the plan of dissolution had made no provision for this fund, the church on February 25, 1977, moved under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), for relief from the judgment, proposing, pursuant to a vote of its board of trustees, that the White fund be divided equally between two of the four churches referred to, the First Congregational Church of Chicopee and the East Congregational Church of Springfield (or, alternatively, paid over in trust entirely to the former). The other churches, one Methodist and the other Baptist, were not to share: the Methodist church was a direct beneficiary under the White trust, and relations between the Baptist church and the petitioning church evidently had become strained. The Attorney General, still favoring dissolution, suggested that the White fund pass to all four churches in the proportions originally voted by the membership. About this time, on March 14, 1977, the Valley Bank and Trust Company, trustee of the White trust, applied to intervene in the action and joined in the rule 60(b) motion. Intervention was allowed and the motion was granted.[1] In a memorandum of decision of April 19, 1977, the judge favored the plan of the board of trust-

---

[1] It is a matter of no moment that a judgment had not actually been entered when the rule 60 (b) motion was granted.

ees for disposal of the White fund to the two churches. But the bank moved at this point to dismiss the action for want of jurisdiction in the Superior Court, urging that dissolution of the church fell under G. L. c. 180, § 11A, which requires that such an action be brought in the Supreme Judicial Court. The judge denied the intervener's motion, and on November 2, 1977, judgment of dissolution entered, with provision as to the White fund in accordance with the judge's earlier memorandum. The bank appealed, and we granted the joint application of the bank and the Attorney General for direct appellate review.

We agree with the bank, and largely for the reasons advanced by it, that the Superior Court was without jurisdiction. Chapter 180 deals with corporations for charitable and sundry civic and social purposes. Section 11A of that chapter says that "[a] charitable corporation constituting a public charity," desiring to close its affairs, may petition for dissolution in the Supreme Judicial Court, and adds that "[t]he provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable corporation."[2] Section 11A contrasts with § 11, the provision for voluntary dissolution of

---

[2] Section 11A provides: "A charitable corporation constituting a public charity organized under the provisions of general or special law, which desires to close its affairs, may, by vote of a majority of its board of directors, authorize a petition for its dissolution to be filed in the supreme judicial court setting forth in substance the grounds of the application for dissolution and requesting the court to authorize the administration of its funds for such similar public charitable purposes as the court may determine. The provisions of this section shall constitute the sole method for the voluntary dissolution of any such charitable corporation." Section 11B deals with involuntary dissolution of "any charitable corporation described in section eleven A." Both sections, originally enacted in 1962, were intended to clarify the procedure for dissolution of the corporations described and to ensure that the cy pres doctrine would apply to the final distributions. M.R. Fremont-Smith, Foundations and Government 306-307 (1965). (Quotations from §§ 11A-11B are from those sections as appearing in St. 1971, c. 819, § 5.)

"[a] corporation which does not constitute a public charity"; there jurisdiction is vested "in the supreme judicial or superior court."[3]

On a superficial view, one readily accepts that an incorporated church functioning in the usual way (or having so functioned but now quiescent for lack of members, see *Syrian Antiochean St. George Orthodox Church* v. *Ghize*, 258 Mass. 74 [1927])[4] is a "charitable corporation" and a "public charity" as well, but as no relevant statutory definitions of these terms can be found, some further analysis is perhaps needed.

The question might arise whether § 11A can apply to a corporation organized otherwise than under c. 180, but here § 11A takes the precaution of indicating that a corporation within its terms may have been "organized under the provisions of general or special law." The petition-

---

[3] New § 11 was enacted in 1971 (St. 1971, c. 819, § 5) when c. 180 was overhauled. It applies to those corporations within the range of c. 180 that do not qualify as public charities and are thus unamenable to cy pres, e.g., social clubs operating "for the benefit of . . . members and . . . guests," *In re Troy*, 364 Mass. 15, 58 (1973); mutual benefit societies whose members have "personal enforceable rights," *Assessors of Boston* v. *Boston Pilots' Relief Soc'y*, 311 Mass. 232, 238 (1942); educational societies with primarily political ends, *Workmen's Circle Educ. Center* v. *Assessors of Springfield*, 314 Mass. 616 (1943). See C.A. Peairs, Business Corporations § 25 n.74 (1971 with 1977 pocket part), for other cases concerning nonprofit corporations not constituting public charities.

Section 11A dissolutions are withdrawn from G. L. c. 213, § 1A, as amended through St. 1962, c. 722, § 3, the general statute regarding concurrency of original jurisdiction between the Supreme Judicial Court and the Superior Court. That statute starts with the expression "[u]nless otherwise specifically provided"; § 11A otherwise provides through "the sole method" language, aided by the contrast between § 11A and § 11 and by the fact that the text of § 11A was reenacted in 1971.

[4] The parties agree that "[a]t no time in the proceedings in the Superior Court was there any evidence introduced which tended to show that the Congregational Church of Chicopee Falls had ever been anything other than a duly constituted Congregational church or had ever acted otherwise than in accordance with its constitution as a Congregational Church."

ing church in fact was organized in 1921 under G. L. c. 67 as a religious corporation. (See also c. 180, §§ 1-2; c. 67, § 51.) But may a "religious" corporation qualify as a "charitable" one in the meaning of § 11A? It is a practical argument in the affirmative that c. 67 has itself no provision for dissolution, and the natural reference is to c. 180. Chapter 180, however, when it recounts the "purposes" for which a corporation may be formed under its provisions, refers to "any civic, educational, charitable, benevolent or religious purpose." § 4 (a), as appearing in St. 1971, c. 819, § 3. This might suggest a line of demarcation between "charitable" and "religious"; but to hold that "charitable" is not thus distinct from "religious," and encompasses or engrosses "religious," appeals to common sense and conforms to ordinary speech. The point is strengthened by our remarks in *Matter of Troy*, 364 Mass. 15, 57-58 (1973) (an educational purpose, for example, has been considered charitable).

That the church was a "public charity" might be challenged on the ground of the private or limited rather than general or indefinite range of its beneficence. Such a contention, which commanded some support in earlier days (see *Parker* v. *May*, 5 Cush. 336, 351 [1850]; *Old S. Soc'y in Boston* v. *Crocker*, 119 Mass. 1, 23-25 [1875]), is overwhelmed by our more recent authority (see *Glaser* v. *Congregation Kehillath Israel*, 263 Mass. 435, 436 [1928]; *Sears* v. *Attorney Gen.*, 193 Mass. 551, 554-555 [1907])[5] and by the evolved conception of the legal meaning of charity. See 4 A.W. Scott, Trusts §§ 368, 371 (3d ed. 1967); Restatement (Second) of Trusts §§ 368, 371 (1959). See also *Jackson* v. *Phillips*, 14 Allen 539, 553, 556, 566 (1867).

---

[5] The *Sears* case notes that early New England religious societies were often close associations of pewholders with proprietary rights in the assets. Hence the doubt about the character of those institutions. But now "[m]ost churches are not only open to the public, but their proprietors seek to promote religion and morality among the people generally." *Sears* v. *Attorney Gen.*, 193 Mass. 551, 555 (1907). Cf. *Lawrence* v. *Selectmen of Egremont*, 350 Mass. 354, 358 (1966); 4 A.W. Scott, Trusts § 371.3 (3d ed. 1967).

Thus we hold that this court was the only proper place for the initiation of the action.[6] On this assumption the bank and the Attorney General join in suggesting that this court should go on to dispose here and now of the whole matter by approving the dissolution of the church and authorizing (as § 11A provides) "the administration of its funds for such similar public charitable purposes as the court may determine." There is pending in this court for the county of Suffolk an action by the bank, as plaintiff, filed February 1, 1978, requesting instructions regarding the proper destination of the 10% of residue of the White trust; joined as defendants are the church, the Attorney General, the four churches mentioned, and certain beneficiaries of the White trust. It is suggested that if we chose to "consolidate" the county court action with the present appeal—i.e. unite the material content of the action with the appeal—we would have enough to enable us to go to final judgment. We think, however, that the question of the appropriate "similar . . . purposes" needs further development, and will be better handled by the single justice after any additional pleading or other measures that may be needed to round out the county court action.

The judgment of the Superior Court should be vacated for want of jurisdiction.

*So ordered.*

---

[6] *Davenport* v. *Attorney Gen.*, 361 Mass. 372 (1972), is consistent with this conclusion. We held there that the Probate Court had jurisdiction to appoint a receiver to liquidate a charitable corporation; however the corporation had already been properly dissolved by order of a single justice of this court. *Id.* at 375.