Connor, John P., J.
BACKGROUND
The defendant is a thirty-one-year-old male who on July 31, 2003 pleaded guilty to three counts of open and gross lewdness for which he received a sentence of two to three years committed, followed by ten years probation. These were the latest in a string of eleven convictions for the same offense that began when he was only sixteen.
As a result of violating probation in his first offense as a juvenile, the defendant was committed to the Division of Youth Services. Over the next eleven years, he has repeatedly re-offended by exposing himself and at times masturbating in public places where the unsuspecting audience included females from age 12 to 51. In 1996, he was sentenced to serve six months for a similar offense. Shortly after his release, he re-offended and was sentenced to two and one-half years in the House of Correction, with six months to serve. He violated probation and was required to serve the remainder of his sentence. In 1997, as a result of a conviction for two additional counts of open and gross lewdness, he received a two-year suspended sentence which he was ultimately required to serve for violation of his probation. During his incarcerations, the defendant has had two disciplinary reports for similar types of offenses one of which resulted in a criminal charge on which he was found not guilty.
As an adult, the defendant has no conviction for any crime except open and gross lewdness.
The Commonwealth presented two psychologists as witnesses, its own expert, Dr. Carol Feldman, and qualified examiner, Dr. Michael Murphy. Both concluded that the defendant has a personality disorder and a mental abnormality as defined by G.L. eh. 123A, § 1, which makes it likely that he will reoffend with acts of open and gross lewdness. Feldman, who was not provided a personal interview with the defendant, opined that the defendant suffers from a mental abnormality in the form of condition of exhibitionism as defined in DSM-IV TR and suffers from an antisocial personality which amounts to a personality disorder as defined by DSM-IV TR. Feldman went on to conclude, both in her testimony and her written report, that the defendant is a sexually dangerous person. Yet, she could not offer an opinion based upon her training, education and experience as to the seriousness of the harm that defendant’s acts posed to those he confronts with his conduct. Murphy corroborated Feldman’s diagnosis, as well as opining that the defendant is likely to reoffend with the same type of conduct before a diverse population if not confined. He also was not sure about the seriousness of the harm of the defendant’s conduct would cause to the public.
The defendant presented three psychologists, including his own experts, Dr Leonard Bard and Joseph Plaud, as well as the other qualified examiner, Dr. Mark Schaefer. The defendant’s privately retained experts both concluded that, while the defendant suffers from a recognized mental disorder of exhibitionism, this condition is not a mental abnormality under G.L. eh. 123A principally because it does not make him a menace to the safety of others. They also opined that he does not suffer from a personality disorder since other than by exposing himself, the defendant has no history of antisocial behavior in dealing with the world. Consequently, both opined that while he is likely to re-offend with the non-contact offenses, he is not sexually dangerous. Schaefer, on the other hand, opined that the defendant does have a mental abnormality in the form of exhibitionism, which is also indicative of a personality disorder. He joined with the defendant’s other experts in concluding that, while the defendant is likely to reoffend, he is not a sexually dangerous person because he is not likely to inflict serious harm on others.
DISCUSSION
“Freedom from physical restraint is a fundamental right.” Kuarubin v. Commonwealth, 440 Mass. 108, 112 (1923). It has “always been at the core of liberty protected by the due process clause from arbitrary governmental action.” Fouch v. Louisiana, 504 U.S. 71, 80 (1992). Yet, there are instances when the risk of harm from a person’s conduct is of sufficient seriousness to empower the government to overburden the individual’s freedom out of concern for the public. Kansas v. Henricks, 521 U.S. 346, 355 (1992). Those include instances where a mental illness or abnormality accompanied by a danger or violence warrant an involuntary civil commitment. Id. at 358; Heller v. Doe, 509 U.S. 312 (1993). Substantive due process requires that when a government restricts a fundamental right, that the action be “narrowly tailored to further a *569 legitimate and compelling governmental interest.” Aime v. Commonwealth, 414 Mass. 667, 674 (1993).
Under G.L. ch. 123A, §1, a sexually dangerous person includes an individual who commits acts of open and gross lewdness as a result of either a personality disorder or a mental abnormality. It is curious that the statute includes as an element of a mental abnormality a determination that the person is “a menace to the health and safety of other persons.” Yet, that element is not included in the definition of a personality disorder. The omission is inconsequential because it is fundamental that a person cannot be civilly committed, i.e. deprived of personal liberty, without a determination of dangerousness to the public. Addington v. Texas, 441 U.S. 418, 425 (1979). The preamble to the revision of G.L. ch. 123A in 1999 makes clear that “the legislative interest at stake is the protection of the public from harm by persons likely to be sexually dangerous.” Commonwealth v. Knapp, 441 Mass. 157, 164 (2004).
“The deprivation of liberty implicates protection of procedural due process.” Querubin v. Commonwealth, 440 Mass. at 118; See, Commonwealth v. Travers, 372 Mass. 328, 250 (1977). The standard of proof for determination of sexual dangerousness has been established as “beyond a reasonable doubt” in G.L. ch. 123A, §14(d). This requires that each element necessary to determine a person to be sexually dangerous must be proved beyond a reasonable doubt. Dangerousness to the public is one of those elements. When the likely conduct is of a predatory and violent nature its dangerousness is self-evident. But when the acts are limited to open and gross lewdness the danger is not so obvious. The tolerance of today’s society for sexual provocative conduct and apparel in advertising, entertainment and even high school dress codes raises real questions as to when and what extent an exhibitionist causes harm to the public. There is no question that the conduct is disgusting and merits criminal punishment but whether it satisfies the dangerousness necessary for a commitment under G.L. ch. 123A must be proved. The Commonwealth has not met its burden on that element, and, as a result, the defendant is found not to be a sexually dangerous person.