Fremont-Smith, Thayer, J.
The Commonwealth has petitioned that Nelson Delgado be committed to the Department of Corrections Massachusetts Treatment Center at Bridgewater, Massachusetts, as a sexually dangerous person, for a period of one day to life, pursuant to G.L.c. 123A, §14(d). After a juiy-waived trial, the Court makes the following findings, rulings, and order for judgment based upon the credible evidence.
On September 2, 1999, Delgado was found guilly after a jury trial of two counts of Indecent Assault and Battery on a Child under 14 years (against “Jessica”) (the “index offenses”). He was sentenced to a term of not less than six years and not more than eight years at MCI-Cedar Junction with five years probation to run from and after on the two counts of indecent assault and battery. Delgado was sentenced to a term of not less than two and a half years and not more than three years at MCI-Cedar Junction on the Open and Gross conviction. For the purposes of the initial commitment, the statute defines a “Sexually dangerous person,” as “any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility.”
It defines a “mental abnormality” as a congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safely of other persons. G.L.c. 123A, §1.
The psychologists at trial disagreed as to whether Delgado is a “pedophile.”
The criteria for pedophilia specified in the Diagnostic and Statistical Manual of the American Psychiatric Association-4th edition, Text Revision (“DSM-IV-TR”) include:
a. Over a period of at least six months, recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children, generally age 13 or younger.
b. The person has acted on these sexual urges or the sexual urges or fantasies cause marked distress or interpersonality difficulty.
c. The person is at least age 16 years and at least five years older than the child or children in Criterion A.
This condition is considered to be chronic and enduring, and there is no cure for the disorder, so that there is a high risk of recidivism.
*7 As Delgado’s victims in this case were aged 10 and 11 at the time of the offense, and no witness was able to conclude with any certainty that the girls were “pre-pubescent,” as required for “pedophilia,” I find that the Commonwealth has failed to prove beyond a reasonable doubt that Delgado is a pedophile who has a high risk of reoffending.
On the other hand, Delgado has been proven to meet the criteria for “exhibitionism.” The criteria for exhibitionism in the DSM-IV-TR are:
a. Over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving the exposure of one’s genitals to an unsuspecting stranger.
b. The person has acted on these sexual urges, or the urges or fantasies cause marked distress or interpersonal difficulty.
Delgado’s histoiy of exposing himself dates back to 1989, when he exposed himself to a Carmalite nun seeking donations, and he also exposed himself to a woman and her child in 1996 when he entered a home on which he was working as a roofer. He again exposed himself to Christina and Jessica during the index offenses.
Exhibitionism is a statutory “sexual offense,” and has been shown to entail a high rate of recidivism.
Delgado’s performance on the “Static-99,” an actuarial test that measures objective (i.e., “static”) factors to index the likelihood of sexual recidivism, indicates that he is at a high risk to reoffend sexually. Other reliable indicators of sexual recidivism are consistent with this result and give further indication that Delgado is likely to reoffend if not confined to a secure facility. Those factors include: his histoiy of criminality for both sexual and non-sexual offenses; the fact that Delgado has had several victims; the fact that he has had both child and adult victims; the presence of “hebophelia” and “exhibitionism”; and his inability to complete sex offender treatment.
Although the Court finds that Delgado is likely to engage in further sexual offenses if not confined and that he has been proven beyond a reasonable doubt to be likely to commit the non-contact offense of exhibitionism (which is reflected in the “Static 99" risk assessment), the question remains whether he is ’’predisposed to the commission of sexual acts to a degree that makes [him] a menace to the health and safety of other persons." (G.L.c. 123A, §1, “mental abnormality”).
In Commonwealth v. Darren Grant, 21 Mass. L. Rptr. 568, 2006 Mass.Super. LEXIS 536 (2006), the Superior Court (Connor, J.), found, with respect to exhibitionism:
“The deprivation of liberty implicates protection of procedural due process.” Querubin v. Commonwealth, 440 Mass. at 118; see, Commonwealth v. Travis, 372 Mass. 238, 250, 361 N.E.2d 394 (1977). The standard of proof for determination of sexual dangerousness has been established as “beyond a reasonable doubt” in G.L.c. 123A, § 14(d). This requires that each element necessary to determine a person to be sexually dangerous must be proved beyond a reasonable doubt. Dangerousness to the public is one of those elements. When the likely conduct is of a predatory and violent nature its dangerousness is self-evident. But when the acts are limited to open and gross lewdness the danger is not so obvious. The tolerance of today’s society for sexual provocative conduct and apparel in advertising, entertainment and even high school dress codes raises real questions as to when and what extent an exhibitionist causes harm to the public. There is no question that the conduct is disgusting and merits criminal punishment but whether it satisfies the dangerousness necessary for a commitment under G.L.c. 123A must be proved. The Commonwealth has not met its burden on that element, and, as a result, the defendant is found not to be a sexually dangerous person.
See also Commonwealth v. Nassar, 380 Mass. 908, 912-18 (1980), which holds that likelihood of serious harm to oneself or to others is required for the involuntary commitment of a mentally ill person under the analogous statute, G.L.c. 123, §16(b).
The case here is more difficult than in the above case, as there has here been at least one prior conviction for a “contact” sexual crime, i.e., sexual assault and battery. Delgado’s counsel, however, has represented to the Court that he will promptly move for a revision to Delgado’s five-year sentence to probation after, so as to require him to continue to attend sexual offender treatment. With this safeguard, the Court finds that Delgado is not likely to reoffend to a degree that he will be “a menace to the health and safety of other persons,” so that he is not a “sexually dangerous person.”
ORDER FOR DISCHARGE
It having been determined after a trial that the above-named Respondent has not been proven, beyond a reasonable doubt, to be a sexually dangerous person, as defined by law, the Court now orders Respondent discharged from custody effective immediately upon completion of his sentence. Respondent’s counsel shall immediately file a motion for modification of Respondent’s conditions of probation so as to require him to attend and successfully complete such sex offender treatment as may be deemed advisable and appropriate by the Probation Department.[1]

This Court is willing to act on such a motion if it is satisfied that it has jurisdiction to do so. (It may be that jurisdiction to modify a criminal sentence rests exclusively in the sentencing court.)